Newton Doyle FORSYTHE, Appellant,

v.

The STATE of Texas, Appellee.

No. 09 82 118 CR.

Court of Appeals of Texas,
Beaumont.

June 29, 1983.

Discretionary Review Refused
Dec. 21, 1983.

Melvyn C. Bruder, Dallas, for appellant.

John R. DeWitt, Asst. Criminal Dist. Atty., Beaumont, for appellee.

## OPINION

BROOKSHIRE, Justice.

Newton Forsythe appeals from a judgment declaring him guilty of Possession of a Controlled Substance and finding him to have been finally convicted of a prior felony of possession of a narcotic drug, marihuana. The jury fixed thirty (30) years confinement as punishment.

Ground of Error No. 1 is brief, terse and precise:

"The evidence is insufficient to sustain appellant's conviction."

The ensuing resume of the evidence is only illustrative, not exhaustive. This record raised fact determinations for the jury. We recount an illuminating few for weighing by the jury.

On the premises at 1745 Reynolds Road, Beaumont, the officers executed a search warrant. In entering two officers were assigned to the back door and several officers were assigned to the front door. They did not announce themselves before entry because of information that the occupants were armed and they desired to prevent the destruction of evidence. As the front door was broken open, they did announce they were police officers. Four (4) people were found inside the residence; namely, Thomas Deslatte, Newton Forsythe, Rudy Vaughn

and Daniel Atkinson. Forsythe was probably the first person seen in the kitchen and was lying on the floor nearest to the kitchen sink and disposal. Detective Louis Barrow immediately turned off the kitchen garbage disposal and the water running in the sink to prevent the destruction of evidence. Forsythe was about six (6) or seven (7) feet from the disposal. The four (4) occupants were brought to the kitchen table immediately and advised of their rights including the *Miranda* warnings. Detective Barrow and another removed the disposal and the piping connected thereto and the water contained therein. The water was put in a jar and later submitted to the Regional Crime Laboratory. The officers then began searching other areas of the house. They next went into and examined the southwest bedroom. From the contents and evidence therein, it was shown that the occupant of this bedroom was Forsythe. Detective Barrow testified that he determined the occupant of that bedroom to be Newton Forsythe. This evidence came into the record without objection. In the same bedroom the officers found a large amount of narcotics paraphernalia normally used and associated with cocaine use and abuse. Also found were clothing of Forsythe's approximate size, along with some photographs in a chest of drawers. One of the pictures of Forsythe was said to have been taken in the bedroom. Some of the same narcotics paraphernalia were mirrors and mirrored surfaces and pieces of equipment used in the ingestion of cocaine along with a large amount of small glass bottles normally used for the packaging of cocaine. The small glass bottles had specially designed caps to facilitate the snorting of cocaine. Leaving the bedroom the search led to the living room where a small glass bottle with white powder believed to be cocaine was located. From the living room the search led to the garage where a large quantity of plastic baggies, with one corner removed, was located and recovered.

Forsythe volunteered automobile keys to one of the detectives and the search progressed to the vehicle in question. After unlocking the trunk, several items of narcotics paraphernalia were found and described. In the vehicle miniature spoons and a leather pouch commonly sold as a pocket container with small mirrors and a small brown vial with a snorting apparatus commonly carried in clothing were found. The evidence tended to show that Forsythe had control, dominion or custody over the vehicle even if the proof of legal ownership was lacking.

A set of Triple Beam Scales was located in the southwest bedroom. The testimony tended to show that the Triple Beam Scales were very accurate balances used to measure small and accurate amounts of cocaine and other narcotics. State's Exhibit # 3 was discovered in the bedroom. Exhibit # 3 was a shoebox containing small vials with specially adapted caps holding about one gram of material—one gram being a common quantity by which cocaine is sold. The specially adapted caps had a small indentation used to remove small quantities or amounts of narcotics. There was no objection to State's Exhibit # 3. State's Exhibit # 4 came into evidence without objection; it contained small glass articles used in the ingestion of cocaine. Exhibits # 6 and # 9 were admitted without objection. Exhibits # 6 and # 9 were envelopes or containers used for packaging various types of narcotics.

Pictures were introduced into evidence said to show Forsythe in the southwest bedroom and showing the location of various pieces of furniture therein. State's Exhibit # 20 was the kitchen disposal removed from under the sink. Inside the disposal were located what appeared to be pieces of glassine or plastic bags and water. State's Exhibit # 21 was a large plastic bag or container and a jar used to hold the water from the disposal and connecting pipes. Exhibit # 21 contained cocaine. State's Exhibit # 22 was a glassine bag with white powder. Exhibit # 22 was discovered in a couch in the living room and the white powder was analyzed as cocaine. State's Exhibit # 23 was found in the same bedroom and contained a green leafy substance identified by one witness as mari-

huana. The analysis and findings of cocaine in Exhibits # 21 and # 22 were made by a chemist who qualified as an expert.

State's Exhibit # 13 was introduced into evidence without objection. State's Exhibit # 13 is described as a metal rod-pipe and from the record it was shown that its primary use was as some nature of converted smoking apparatus. The same witness that identified Exhibit # 13 also testified from experience, without objection, that cocaine was generally consumed by snorting but that cocaine was also ingested by injection and by smoking.

Detective Barrow said that the residents at 1745 Reynolds Road were Tom Deslatte and Newton Forsythe. He further testified that from the evidence seized and the execution of the search warrant, Tom Deslatte and Newton Forsythe were the actual residents of the house in question. The evidence tended to show the clothes in the southwest bedroom were those of Forsythe since the only other occupant was Deslatte who was six (6) or seven (7) inches taller and probably wore a different size.

State's Exhibit # 17 was a written document said to show a bookkeeping record upon which appeared persons' initials with monetary figures beside them, weights and scale figures in grams and other measurements. Appellant's objection to State's Exhibit # 17 was based on hearsay. Exhibit # 17, from the record, was not introduced to prove the truth of the writings thereon. Hence, the classical hearsay rule does not apply. State's Exhibit # 16 was entered into evidence without objection, being a bag containing small gram bottles with caps featuring a spoon-type apparatus on top.

We repeat and emphasize that this resume is fragmentary only and not complete. From the record before it at the guilt/innocence stage the trial jury had the right and duty to weigh this evidence on the question of Forsythe's knowingly and intentionally possessing cocaine.

Reviewing this as a circumstantial evidence case, we hold that there was suffi-

cient evidence to sustain the appellant's conviction.

We have tested this record, by the standard of appellate review, concerning the sufficiency of evidence as urged by the appellant. He cites *Culmore v. State,* 447 S.W.2d 915, 916 (Tex.Cr.App.1969) reading:

" 'In ascertaining whether the guilt of the accused has been established to a moral certainty, the appellate court will review the evidence in light of the presumption that the accused is innocent. The court will not presume any acts against the accused that are not shown to have been committed by him. Furthermore, a conviction will not be sustained on appeal if the evidence does not sufficiently establish all material elements of the offense charged.' "

Unlawful possession of a controlled substance by a defendant is sufficiently shown when the State proves to the satisfaction of the jury two essential elements:

1. That the defendant exercised care, control and management over the contraband; and

2. That the defendant knew that the matter possessed was contraband.

In *Dubry v. State,* 582 S.W.2d 841, 843 (Tex.Cr.App.1979) the court writes:

"To establish unlawful possession of a controlled substance, the State must prove two elements: (1) that the accused exercised care, custody, control, or management over the contraband, and (2) that the accused knew the matter possessed was contraband. *Wilkes v. State,* 572 S.W.2d 538 (Tex.Cr.App.1978); *Harrison v. State,* 555 S.W.2d 736 (Tex.Cr.App. 1977); *Rice v. State,* 548 S.W.2d 725 (Tex. Cr.App.1977); *Hernandez v. State,* 538 S.W.2d 127 (Tex.Cr.App.1976).

"Possession of the contraband need not be exclusive and evidence which shows the accused jointly possessed the contraband with another is sufficient. *Waldon v. State,* 579 S.W.2d 499 (Tex.Cr.App. 1979); *Sewell v. State,* 578 S.W.2d 131 (Tex.Cr.App.1979); *Wilkes v. State,* supra; *Harrison v. State,* supra."

■ Appellant complains that a useable amount of cocaine was not proved. Under this record, we hold that it was not part of the burden of the State nor an element of this offense to prove a useable amount of cocaine. The evidence raised for the jury and the jury could have believed beyond a reasonable doubt that the appellant herein was in the process of attempting to do away with or destroy the substance later chemically analyzed as cocaine. Under these facts we hold that the State is not required to prove that the appellant possessed any particular quantity of cocaine and the fact that there was no quantitative analysis of the cocaine is not an element of the charged offense. See *Shults v. State,* 575 S.W.2d 29 (Tex.Cr.App.1979); *Daniels v. State,* 574 S.W.2d 127 (Tex.Cr.App.1978).

*The Shults Case, supra,* is partly distinguishable in that the substance was so small that it *could not be quantitatively measured.* In the instant case, it could have been quantitatively measured. *The Shults Case, supra,* reasons that if the quantity of the substance is so small that it cannot be quantitatively measured then there must be other evidence (other than mere possession), to prove that the defendant knew that the substance in his possession was a controlled substance. The facts in the instant case supply the other necessary evidence of culpable knowledge. In *The Shults Case, supra,* the court wrote:

"When the quantity of a substance possessed is so small that it *cannot be quantitatively measured,* there must be evidence other than its mere possession to prove that the defendant knew the substance in his possession was a controlled substance." (emphasis added)

■ In the instant case, we find and hold that there was other evidence tending to prove that the defendant knew the substance in his possession was a controlled substance; namely, cocaine, and that at least an issue was presented for the jury's determination. See and compare *Daniels v. State, supra.* In a supplemental brief, appellant relies on *Morr v. State,* 587 S.W.2d 711 (Tex.Cr.App.1979) and *Coleman v.*

*State,* 545 S.W.2d 831 (Tex.Cr.App.1977). In *Morr, supra,* the vials found on the back floor board of the borrowed automobile were described as cocaine testers. The chemist testified that the cocaine was only .05% of the entire matter. In view of the .05% finding, the court wrote:

"We conclude that, under the circumstances, the evidence is not sufficient to show that the appellant knowingly possessed cocaine as alleged in the indictment. See *Coleman v. State,* 545 S.W.2d 831 (Tex.Cr.App.1977)."

Our record is signally different and sufficient. Considering the record on the guilt or innocence part of this bifurcated trial, we overrule Ground of Error No. 1; as a corollary we hold that the demonstrative evidence found in the house, with the testimony pertaining thereto, supports and sustains appellant's conviction.

■ Appellants Ground of Error No. 2 asserts:

"The trial court erred by denying the appellant's motion to suppress evidence and thereafter admitting into evidence the fruits of a search that was violative of the laws and constitutions of the State of Texas and the United States."

The essence of this attack is that the affidavit executed in support of the search warrant contained false statements. Since these allegedly false statements were necessary to a finding of probable cause, then, appellant argues, the motion to suppress should have been granted and the fruits of the search should have been ruled inadmissible at the trial on the merits. After a careful reading of the entire record on the hearing on the motion to suppress, it is lucidly demonstrated that there was a fact issue, or several fact issues, for the trial judge to decide. The trial judge, who was the arbiter and fact finder, ruled against the appellant. The trial judge, after having a full hearing on the motion to suppress, read into the record his decision:

"THE COURT: I disagree.

"The Court, having heard testimony and argument of Counsel, makes the following findings, that the motion to show

that this affidavit was not made truthfully by Officer Louis Barrow is denied and that the Court does not believe any of the testimony given by the witness Brenda Bradshaw today.

"The Court also finds that the Defense Counsel had the burden to show the affiant in this search warrant deliberately made false statements or made false statements with a reckless disregard for the truth. The Court finds that Defense Counsel did not sustain that burden, therefore the motion is denied."

After carefully reviewing and analyzing the testimony of the witnesses at the hearing on the motion to suppress, we hold the trial judge did not abuse his discretion. The following is quoted from *Taylor v. State*, 604 S.W.2d 175 (Tex.Cr.App.1980):

"The trial judge is the sole fact finder at a hearing on a motion to suppress and, as such, he may choose to believe or disbelieve any or all of the witnesses' testimony.

. . . .

"Whether the testimony of the witnesses was credible was an issue for the trial court to decide... Even if the trial court had concluded from this evidence that the information contained in the tip was false, there was no evidence that the affiant (Officer Cleveland) knowingly, intentionally or with reckless disregard placed false assertions in the affidavit."

Moreover, it was for the trial court to determine whether or not there was evidence to the effect that the affiant peace officer knowingly, intentionally or with reckless disregard, placed false assertions in the affidavit. *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); *Etchieson v. State*, 574 S.W.2d 753, 758 (Tex. Cr.App.1978), cert. denied, 440 U.S. 936, 99 S.Ct. 1282, 59 L.Ed.2d 495. In a supplemental brief appellant cites *Sinegal v. State*, 582 S.W.2d 135 (Tex.Cr.App.1979) and *Smith v. State*, 547 S.W.2d 6 (Tex.Cr.App. 1977), which we find to be not controlling.

■ In appellant's original brief and his supplemental brief, he insists that this ground of error presents a *Franks v. Dela-*

*ware, supra* issue. We find that the standards and requirements of *Franks v. Delaware, supra,* were met by the trial judge. Moreover, we find and hold that the entirety or totality of the circumstances and evidence at the hearing on the motion to suppress, weighed in a common sense, practical manner, demonstrated to the trial court that the magistrate perceived reasonable probable cause. Our duty as an intermediate appellate court is simply to insure that the magistrate had a substantial basis for concluding that probable cause existed. *Illinois v. Gates*, —— U.S. ——, 103 S.Ct. 2317, 76 L.Ed.2d 527. The duty of the issuing magistrate is simply to determine, by means of a practical, common sense decision, whether (having been given all the circumstances set forth in the affidavit before him) there is a fair probability that contraband or evidence of a crime will be found in a particular place. The duty of the reviewing trial judge at the hearing on the motion to suppress is simply to insure that the magistrate had a substantial basis for finding "probable cause". The nature of proof and the affidavit is to be judged in a practical and non-technical manner which comports with everyday, pragmatic assessment of the probabilities in a factual situation. Probable cause is to be tested by reasonable and prudent men or magistrates and not legal technicians. *Illinois v. Gates, supra.* Ground of Error No. 2 is overruled.

■ Appellant's Ground of Error No. 3 states:

"The trial court erred by admitting into evidence the fruits of the search of the defendant's automobile, because the search was conducted without a warrant and without probable cause, in violation of the laws and constitutions of the State of Texas and of the United States."

Following the holding of *Illinois v. Gates, supra,* as discussed above, we adhere to the entirety or totality of the circumstances approach to the treatment of probable cause. The correct probable cause standard is a practical, pragmatic and non-technical one. Probable cause, as that term itself connotes, deals with probabilities, which are

factual and connote the practical considerations of every day life upon which reasonable and prudent men act. *Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). In *United States v. Cortez,* 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981), concerning the probable cause standard the Court wrote:

"The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as fact finders are permitted to do the same—and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.

In any event, appellant says in this ground of error that there simply was no warrant and no probable cause. There was a warrant; there was probable cause. *Illinois v. Gates, supra.* Ground of Error No. 3 is overruled.

 Ground of Error No. 4:

"The trial court erred by admitting into evidence State's Exhibit No. 17, a document containing writing, because such document constituted hearsay."

State's Exhibit No. 17 is largely unintelligible but, under this record, it was not offered solely for the truth of the matters contained therein. Hence, the traditional, classical hearsay rule was not impermissibly violated. An exception to the hearsay rule is applicable when the proffered evidence tends to show knowledge, intent or belief of the party, when such knowledge, intent or belief is material to the case. *R. RAY, TEXAS LAW OF EVIDENCE, Sec. 799 (Texas Practice 3rd ed. 1980)* In view of the nature of the specimen of cocaine recovered it became a part of the State's case to show knowledge on the part of the appellant that he was in possession of contraband. Bearing in mind this is a circumstantial evidence case, we think that State's Exhibit No. 17 was properly admitted on an

element of the State's case. Ground of Error No. 4 is overruled.

 The appellant, in his Ground of Error No. 5, complains of the Court's charge on the law of parties. The appellant concedes that the trial court's instruction on the law of parties was consistent with *TEX. PENAL CODE ANN., Sections 7.01(a) and (b) and 7.02(a)(2)* (Vernon 1974). In applying the law to the facts the Court charged, inter alia, that:

"... Newton Doyle Forsythe, either acting alone or as a party, did then and there intentionally or knowingly possess a controlled substance listed in Penalty Group 1 of the Texas Controlled Substances Act, namely: Cocaine, you shall find the defendant guilty of the offense of Possession of a Controlled Substance.

"Unless you so find, or if you have a reasonable doubt thereof, you shall find the defendant not guilty."

The appellant objected to the charge as follows:

"Defendant objects to the charge as a whole because included in this charge as a definition is, one, parties to an offense, the basis of the objection being the facts needed to raise the issue of parties to an offense were not raised sufficiently or at all during evidence presented during this trial. I bring to the Court's attention this case as charged against this Defendant for possession of a controlled substance. The only other possible linkage to parties would constitute some other offense and does not relate to the offense for which the Defendant is charged, that is, the possession of a controlled substance."

The appellant first seeks to sustain this ground of error urging that, in this circumstantial evidence case, the circumstantial evidence charge and the charge on the law of parties creates an "internal conflict". But the appellant did not object to the charge on the basis of an "internal conflict". Therefore, a waiver was effected. *Duffy v. State,* 567 S.W.2d 197 (Tex.Cr.App. 1978). The absence of an objection to the charge usually waives all but fundamental

error. *Rummel v. State,* 509 S.W.2d 630 (Tex.Cr.App.1974).

The appellant urges a second reason why the trial court erred by charging the jury on the law of parties—that the evidence does not support such a charge. If this question of parties is not raised by the evidence, any possible error in the submission of the abstract law of parties is harmless because a part of the charge applying the law to the facts authorizes the jury to convict if it finds the defendant was acting alone. *Todd v. State,* 601 S.W.2d 718 (Tex. Cr.App.1980). We have held and now hold that the evidence of appellant's conduct standing alone was sufficient to sustain and support the conviction; hence, any error was harmless. Nor do we perceive reversible error, *Stein v. State,* 514 S.W.2d 927 (Tex.Cr.App.1974); *Hannon v. State,* 475 S.W.2d 800 (Tex.Cr.App.1972).

In appellant's last Ground of Error, No. 6, it is asserted that by permitting the State to adduce testimony relative to the appellant's occupancy in the house in which the cocaine was found caused harmful, reversible error.

The appellant is in no position to complain of testimony he, himself, developed or elicited from other witnesses. And evidence brought out by the defendant on cross-examination usually does not constitute a ground for reversal. *27 TEX. JUR.3rd Criminal Law Sec. 4338, at 184–185* (1983). The appellant cannot be heard to complain of testimony or evidence that he elicited by his own cross-examination of witnesses. *Stephens v. State,* 522 S.W.2d 924 (Tex.Cr.App.1975). In the instant case the defense brought out in the early cross-examination of Detective Barrow that he (Barrow) had been told by his informant that he appellant was living at the residence involved. The cross-examination was:

"Q You went there looking for Thomas Deslatte. Is that right?

"A He was mentioned in the search warrant, yes, sir.

"Q You had no idea Newton Forsythe would be there, do you?

"A Yes, sir, I did.

"Q The informant didn't tell you that, did she?

"A Yes, sir, she did."

Later, Detective Barrow testified that Tom Deslatte and Newton Forsythe were residents in the house on Reynolds Road and based upon the evidence that was seized upon the execution of the search warrant, he determined that the residents of that house were Tom Deslatte and Newton Forsythe. A careful reading of the record shows that Barrow stated that he did not have personal knowledge about Newton Forsythe being a resident of the Reynolds Road address prior to the time that he (Barrow) executed the search warrant. Barrow did testify unequivocally that he had personal knowledge of Newton Forsythe's being a resident of the house in question during and subsequent to the execution of the search warrant. Barrow's testimony, concerning his personal knowledge after the execution of the search warrant, was not hearsay and, in any event, we do not perceive harmful reversible error. The last ground of error, being No. 6, is overruled. Finding no harmful reversible error the judgment therefore must be affirmed.