# FAYETTEVILLE SCHOOL DISTRICT NO. 1 *v.* ARKANSAS STATE BOARD OF EDUCATION

92-1226                                       852 S.W.2d 122

Supreme Court of Arkansas
Opinion delivered May 3, 1993

*Rudy Moore, Jr., P.A.*, for appellant. .

*Sharon Carden Street*, Arkansas Department of Education; and *Winston Bryant*, Att'y Gen., by: *Tim Humphries*, Senior Asst. Att'y Gen., for appellee.

JACK HOLT, JR., Chief Justice. The Fayetteville School District No. 1 (the School District) appeals the denial of its request for a permanent injunction by the Pulaski County Chancery Court to halt the State Board of Education (the Board) from withholding Minimum Foundation Program Aid (MFPA) funds the Board claims it overpaid the School District in the total amount of $623,535 over the budget years of 1984-85 and 1985-86. The Board notified the School District on July 18, 1988 that $124,707 would be withheld from the School District's 1988-89 budget and that the remaining $498,828 would be withheld in the same manner from the District's future MFPA proceeds pursuant to Ark. Code Ann. § 6-20-310 (Supp. 1991). We affirm the chancellor's rulings.

This controversy arose from our decisions in *Arkansas Pub. Serv. Comm'n* v. *Pulaski County Bd. of Equalization*, 266 Ark. 66, 582 S.W.2d 942 (1979) and *Dupree* v. *Alma Sch. Dist. No. 30*, 279 Ark. 34, 651 S.W.2d 90 (1983) and the remedial

legislation passed by the Arkansas General Assembly in response to these decisions. In *Public Serv. Comm'n* v. *Pulaski County*, *supra*, we held that our constitution requires that all property subject to taxation must be taxed according to its value and that this value must be equal and uniform throughout the state. To put this holding into effect, we affirmed the trial court's approval of an agreement of all the parties in litigation, except one which had not argued the matter in its brief, for statewide reassessment over a five year period commencing January 1, 1981. Under this plan, our seventy-five counties were put into groups of fifteen counties to be reassessed each year named Groups One through Five, respectively. The order of placement of counties within these groups was to proceed from those counties which were deemed to have the greatest disparity between assessed and actual values to those with the least disparity.

Later in *Dupree*, *supra*, we declared the funding formula for state aid to local school districts to be unconstitutional and found that the ongoing reassessment of our counties required by *Public Serv. Comm'n* v. *Pulaski County*, *supra*, would not alter this holding.

Following *Dupree*, the General Assembly passed the School Finance Act of 1984, now Ark. Code Ann. § 6-20-301—319 (1987 & Supp. 1991), which contained an equalizing formula whereby a school district's local wealth per student determined the amount of state aid per student the district received thus guaranteeing that the combination of local and state monies would equal a minimum amount per student. This Act took into account the fact that the fifteen counties in Group Four were to be reappraised in the 1984-85 school year and the fifteen counties in Group Five were to be reappraised in the 1985-86 school year. It further provided that until actual reassessments for the districts in Groups Four and Five could be undertaken, MFPA levels would be based on estimates made by the Assessment Coordination Division of the Public Service Commission. Specifically, Ark. Code Ann. § 6-20-310(a) (Supp. 1991) provided for "set-aside funds" or an adjustment against funds the school district was to receive if the actual, reassessed property value exceeded the former value by greater than five percent:

Funds shall be set aside from the total monies availa-

ble for allocation under the provisions of this Act for adjustments in aid allocation for any district whose actual real property assessment, when certified by the county clerk and/or the county school supervisor, has increased or decreased by more than five percent from the projected amount used in determining aid for the district. The Department of Education shall adjust to the five percent level in the year in which the funds are distributed. This provision shall only apply in the 1984-85 year to districts in the fifteen counties completing the reappraisal process in that year and in 1985-86 to only the districts located in those counties completing the reappraisal process in that year.

Section 6-20-310(a) was amended by Act 674 of 1985 to allow the Department of Education to recover overpayment amounts over a two year period for districts whose repayment amounts were significant. It was again amended by Act 203 of 1987 to provide additional relief to districts with significant repayment amounts by allowing repayments to be spread out over five rather than two years and by Act 480 of 1989 to ensure that any increase in MFPA due to increased enrollment was deleted from the calculation of a district's increase in MFPA for the purpose of calculating the amount of repayment.

In 1985, Washington County reassessed its property. The Board of Education claimed the increase in current market values of property in that county resulted in overpayment by the state of $623,535 recoverable by the state pursuant to Ark. Code Ann. § 6-20-310(a) (Supp. 1991). The School District sought a preliminary injunction to stay the withholding of the first install-ment, $124,707, claiming it would suffer irreparable harm, but this was denied after a hearing. The School District then filed an amended complaint seeking a permanent injunction on constitu-tional grounds. The case was submitted to a chancellor upon stipulated facts, briefs, and the testimony given in the prior hearing on the District's motion for a preliminary injunction. The chancellor found that the School District had failed to establish that the payback provisions of the 1984 School Finance Act were unconstitutional, arbitrary, or inequitably applied and denied the District's request for a permanent injunction.

Testimony by witnesses for the School District revealed that the last counties to be reappraised, those in Groups Four and Five, were purposefully saved for last because they were deemed to have the smallest disparity between reassessed and actual values.

The procedure under the School Finance Act was that the Assessment Coordination Division of the Public Service Commission was to provide estimates of reappraised values for school districts in Groups Four and Five until actual reappraisals were completed. Once reappraisal was completed, the Assessment Coordination Division was to make another estimate of what the property should have been appraised for in those previous two years, and if the variance between this second estimate and the actual value is greater than five percent, a reclamation of aid was to take place.

In support of its claim of irreparable harm, the District presented testimony that under the School Finance Act of 1984, 70% of a school district's current net revenues are to be spent on salaries and benefits for teachers and administrators, and the School District did this with the monies received which the Board is now seeking to reclaim. Furthermore, school districts in Arkansas are required to renew the contracts of their teachers and administrators for a subsequent year at the same terms as the previous year, so now the School District is locked into contracts at certain rates based on the monies received from the Board which the Board now wants back. Since this salary expense is set, the shortfall in revenue comes out of supplies, maintenance, and salaries for support staff.

Other testimony presented by the District revealed that the counties in Groups Four and Five which received MFPA funds based on estimates of fair market value which the Board subsequently determined to be in error were the only districts in the state subject to the retroactive payback provisions of the Act.

The Board responded by putting on evidence that the School District failed to show irreparable harm was wrought by the withholding of $124,707 in MFPA funds during the 1988-89 school year. While the School District argues that the withholding of funds created a great hardship, in fact the District ended the 1987-88 school year and thus went into the 1988-89 year with a budget surplus of $977,211. Also, the amount withheld was only

1.66% percent of $7,525,243, the total MFPA funds received by the District for the 1988-89 school year.

POINT I: DID THE SCHOOL FINANCE ACT OF 1984 AS AMENDED REPRESENT SPECIAL AND LOCAL LEGISLATION IN VIOLATION OF AMENDMENT 14 OF THE ARKANSAS CONSTITUTION?

Amendment 14 to the Arkansas Constitution provides that the "General Assembly shall not pass any local or special act."

The School District argues that the School Finance Act of 1984 violates this constitutional prohibition because the effect of the law is to arbitrarily separate certain school districts from the benefits of the Act, whereby, the only school districts which are forced to repay overpayments of state aid are those in the Fourth and Fifth Groups which were given erroneous estimates by the Assessment Coordination Division. In addition, Groups Four and Five contain the only school districts which must pay back overpayments while other categories of school districts, i.e., isolated schools, hardship or emergency schools, schools consolidated in 1983-84 or 1985-86, and schools with less than 360 students average daily membership were either allowed gradual or no reduction in overpayments.

In *Owen* v. *Dalton*, 296 Ark. 351, 757 S.W.2d 921 (1988), we held:

> An act is special if by some inherent limitation or classification it *arbitrarily* separates some person, place, or thing from those upon which, but for such separation, it would operate, and the legislation is local if it applies to any division or subdivision of the state less than the whole;

and in *City of Little Rock* v. *Waters*, 303 Ark. 363, 371, 797 S.W.2d 426 (1990), we specifically stated that just because a statute may ultimately affect less than all the state's territory it does not necessarily render it local or special.

In evaluating the facts, the chancellor noted that the determinative factor is whether the General Assembly acted in an arbitrary manner to separate one division of the state from another. We apply the rational basis test to determine whether such a separation is arbitrary. *Streight* v. *Ragland, Comm'r*, 280

Ark. 206, 655 S.W.2d 459 (1983). Under the rational basis test, legislation is presumed constitutional and rationally related to achieving any legitimate governmental objective under any reasonably conceivable fact situation. *Id.* This presumption places the burden of proof on the party challenging the legislation to prove its unconstitutionality, i.e., that the legislation is not rationally related to achieving any legitimate objective of the government under any reasonably conceivable fact situation. *Phillips* v. *Giddings*, 278 Ark. 368, 646 S.W.2d 1 (1983). The School District had the burden of showing that the General Assembly acted arbitrarily when it implemented the School Finance Act of 1984 in its amendments and it has failed in this regard.

The Board cites *Thomas* v. *Foust*, 245 Ark. 948, 435 S.W.2d 793 (1969), for the rule that even though a law is limited in effect to only a few classifications, it is not necessarily special or local legislation if the classification is not arbitrary and bears a reasonable relation to the purpose of the law. We hold that the rule in *Thomas* v. *Foust*, *supra*, controls and agree with the trial court's detailed and well reasoned opinion in which the chancellor found that the School Finance Act of 1984, as amended, was general legislation and not special or local legislation because it bears a reasonable relationship to the law.

The purpose of the Act was to provide more equitable school funding which in turn was dependent on assessments that were based upon current market values established by reassessment. The districts singled out for classification into Groups Four and Five were those in which reassessment would not be complete and which would therefore require special treatment to take that into account.

As was aptly stated by the chancellor:

It is clear that the General Assembly had to rectify one problem prior to the solving of another. After *Alma*, the legislature had to formulate a method to allocate MFPA when some real property values were unavailable since county-wide reappraisal had not been completed. The plaintiff has failed to prove that the legislation did not have a rational basis, i.e., an attempt to fairly distribute state aid on a per student basis when some counties had not

completed reappraisal. The counties in the fourth and fifth-year reappraisal groups were treated similarly under the act and necessary adjustment would be made in all school districts in those counties. Although these school districts were treated differently than the districts in the first three groups of counties, the intended result was that, after adjustment, all the districts would eventually be treated equally.

All legislative acts are presumed to be constitutional, and all doubts will be resolved in favor of an act's constitutionality if it is possible to do so. *Davis* v. *Cox*, 268 Ark. 78, 593 S.W.2d 180 (1980). In light of this rule and the findings of the chancellor, we hold that this School Finance Reform Act of 1984 is constitutional.

POINT II: DOES THE 1984 SCHOOL FINANCE ACT, AS AMENDED, VIOLATE ARTICLE 14, SECTION 2 OF THE ARKANSAS CONSTITUTION?

Article 14, § 2 of the Arkansas Constitution states:

No money belonging to the public school fund, or to this State for the benefit of schools or universities, shall ever be used for any other than for the respective purposes to which it belongs.

The School District argues that public policy and cases following *Lepanto Special Sch. Dist.* v. *Marked Tree Special Sch. Dist.*, 173 Ark. 82, 291 S.W.2d 1006 (1927), support the rule that a school district cannot be compelled to repay funds erroneously apportioned to it if such funds were consumed for educational purposes. *See Newark Sch. Dist.* v. *Cord-Charlotte Sch. Dist.*, 278 Ark. 110, 664 S.W.2d 110 (1983).

The School District erroneously states "*Lepanto* says such funds are not recoverable from the School District and to do so would implicitly violate Article 14, Section 2 of the Arkansas Constitution." We assume the District intended Section 3 rather than Section 2, since in *Lepanto* we cited Section 3:

The court is committed to the doctrine that school taxes erroneously levied and distributed, pursuant to the levy, to a school district and consumed in educational

purposes, cannot be recovered by the school district rightfully entitled thereto. The district to which the taxes rightfully belonged should have proceeded by injunction or other proper remedy to prevent the wrongful assessment, levy and distribution of taxes, or else have brought a suit for recovery of such taxes before they were expended for educational purposes by the district wrongfully receiving them.

Appellant contends, however, that the rule therein announced is in conflict with the last proviso of § 3, Article 14, of the Constitution of the State. The proviso referred to is as follows:

Provided, further, that no such tax shall be appropriated to any other purpose not to any other district than that for which it was levied.

*Lepanto Special Sch. Dist.* v. *Marked Tree Special Sch. Dist,* 173 Ark. 82, 83-4, 291 S.W.2d 1006, 1007 (1927). Also, *Newark Sch. Dist., supra,* does not cite Article 14 at all.

The Board in its argument distinguishes *Lepanto* and replies that the legislative enactments which provide recoupment of the overpaid funds was a valid legislative exercise complimenting our decision in *Dupre* v. *Alma Sch. Dist. No. 30,* 279 Ark. 34, 651 S.W.2d 90 (1983) and *Arkansas Pub. Serv. Comm'n,* v. *Pulaski County Bd. of Equalization,* 266 Ark. 66, 582 S.W.2d 942 (1979). We agree.

We also agree with the chancellor that the School District failed to discern the important differences between the *Lepanto* case and the present case. The *Lepanto* Court was not considering a state statute which required the state to pay a school district less MFPA in a subsequent year because of an overpayment based on assessed valuation prior to the *Pub. Serv. Comm'n* case in a previous school year. Also, in *Lepanto* we held that one school district could not recover funds to which it is entitled from another school district who had expended those funds, not, as here, that the state acting according to state law could not recover funds from a school district. For these reasons, *Lepanto* offers no precedential authority for the District's proposition.

It is obvious to us that the payback provisions of the

School Finance Act of 1984 as amended represent a legal recoupment of state funds. In order for the state to distribute state funds to school districts, the state had to devise a mechanism which considered the outcome of the *Publ. Serv. Comm'n* case directing reassessment of property and the *Dupree* case holding the school finance formula unconstitutional. Without considering both of these cases, there was no way to legally distribute state funds to school districts. The School Finance Act and subsequent amendments defined how state funds would be distributed while the Assessment Coordination Division reassessed property values throughout the state. Since this court ordered reassessment and determined when each county would be assessed, the General Assembly rightfully addressed through these enactments, the flow of state funds, all of which were within the parameters established by this court's opinions.

POINT III: DOES THE 1984 SCHOOL FINANCE ACT AS AMENDED PROVIDE EQUAL AND UNIFORM ASSESSMENT OF REAL PROPERTY IN THE SCHOOL DISTRICT AS REQUIRED BY ARTICLE 16, SECTION 5, OF THE ARKANSAS CONSTITUTION?

■ Article 16, § 5, in part, requires "all real and tangible personal property subject to taxation shall be taxed according to its value, that value to be ascertained in such manner as the General Assembly shall direct, making the same equal and uniform throughout the state." The School District argues that since *Arkansas Pub. Serv. Comm'n* v. *Pulaski County Bd. of Equalization, supra,* defined "value" as "current market value," the use of estimates of value by the PSC in determining the MFPA funds to be received and subsequently recouped from districts in Groups Four and Five is unconstitutional. The School District cites no authority in support of this argument, and we will not address arguments not supported by authority. *Goodwin* v. *Harrison,* 300 Ark. 474, 780 S.W.2d 518 (1989) (assignments of error that are unsupported by convincing argument or authority will not be considered on appeal unless it is apparent without further research that they are well taken).

For all the foregoing reasons, we affirm.