Joe McCUTCHEN *v.* Mike HUCKABEE, Governor of the State of Arkansas; Richard Weiss, Director of the Arkansas Department of Finance and Administration; The Multi-purpose Civic Center Facilities Board for Pulaski County, Arkansas

96-1508                                               943 S.W.2d 225

Supreme Court of Arkansas
Opinion delivered April 21, 1997
[Petition for rehearing denied May 27, 1997.]

*Oscar Stilley*, for appellant.

*Williams & Anderson*, by: *Timothy W. Grooms, Leon Holmes, Jeanne L. Seewald*, and *J. Madison Barker*, for appellee Multi-Purpose Civic Center Facility Board.

*Pulaski County Attorney's Office*, by: *Pat Crossley, amicus curiae*; joined by: *Arkansas Municipal League*, by: *Don Zimmerman*; *Association of Arkansas Counties*, by: *Shep Russell*; *Hot Springs City Attorney's Office*, by: *David White*, for the *Hon. Robin Mays*.

ANNABELLE CLINTON IMBER, Justice. The appellant, Joe McCutchen, has challenged the constitutionality of Act 739 of 1995 whereby the Arkansas General Assembly appropriated 20 million dollars for the construction of a multipurpose civic center in Pulaski County. The chancellor ruled that the Act was constitutional, and accordingly, it granted the State's motion for summary judgment. We affirm.

The facts of this case are undisputed. On or about March 10, 1995, the Arkansas General Assembly passed Act 739 of 1995 whereby 20 million dollars were appropriated to the Department of Finance and Administration to defray the cost for construction of a multipurpose civic center in Pulaski County. The relevant provisions of Act 739 are as follows:

> SECTION 1. APPROPRIATIONS. There is hereby appropriated, to the Department of Finance and Administration,

— Disbursing Officer, to be payable from the General Improvement Fund or its successor fund or fund accounts, the following:

(A) For assisting local governments located in Pulaski County, Arkansas in defraying the cost associated with constructing and equipping a multi-purpose civic center, the sum of. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $20,000,000.

The governor signed Act 739 on March 22, 1995, and by virtue of an emergency clause contained therein, the Act became effective on July 1, 1995.

On August 23, 1995, the Pulaski County Quorum Court enacted Ordinance No. 95-OR-64 which created the Multi-purpose Civic Center Facility Board for Pulaski County, Arkansas. By virtue of the Ordinance, the Facility Board was granted various powers necessary for the construction of the civic center, and the board was granted ownership of the facility. Since the enactment of Act 739, the Arkansas Department of Finance and Administration has paid 11 million dollars to Pulaski County, which in turn tendered the funds to the Facility Board.

On December 21, 1995, Joe McCutchen, as a representative of the taxpayers in Arkansas, filed a complaint in the Pulaski County Chancery Court challenging the constitutionality of Act 739. McCutchen named the Governor, the Director of the Arkansas Department of Finance and Administration, the Members of the Facility Board, and Pulaski County[1] as defendants (the "State"). Both parties subsequently filed motions for summary judgment in which they claimed that the material facts were undisputed, and that each side was entitled to a judgment as a matter of law.

On September 11, 1996, the chancery court conducted a hearing on the motions for summary judgment. During the hearing, the court took judicial notice of the following facts: 1) Pulaski County is the most populous county in the state, 2) according to the 1990 census, Pulaski County had a population of 349,660 while the next largest county, Washington County, had a

---

[1] On September 17, 1996, the chancery court dismissed the separate defendant Pulaski County. .

population of only 113,409, 3) Pulaski County is centrally located within the state, and 4) Pulaski County is the seat of the state government. The trial court concluded that the General Assembly rationally decided that a civic center located in Pulaski County would enhance tourism, recreation, and economic development of the entire state, and therefore the Act withstood McCutchen's various constitutional challenges.

Accordingly, on September 19, 1996, the chancery court denied McCutchen's motion for summary judgment and granted summary judgment in favor of the State. From this order, McCutchen filed a timely notice of appeal.

■ McCutchen appeals from the trial court's granting of summary judgment to the State. In *Milam v. Bank of Cabot*, 327 Ark. 256, 937 S.W.2d 653 (1997), we recently summarized our review of a trial court's grant of summary judgment as follows:

> In these cases, we need only decide if the granting of summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion left a material question of fact unanswered. The burden of sustaining a motion for summary judgment is always the responsibility of the moving party. All proof submitted must be viewed in a light most favorable to the party resisting the motion, and any doubts and inferences must be resolved against the moving party. Our rule states, and we have acknowledged, that summary judgment is proper when a claiming party fails to show that there is a genuine issue as to a material fact and when the moving party is entitled to summary judgment as a matter of law.

■ In this appeal, McCutchen raises five constitutional challenges to Act 739 of 1995. It is well settled that acts of the General Assembly are presumed to be constitutional and will be struck down only where there is clear incompatibility between the act and the state constitution. *Stratton v. Priest*, 326 Ark. 469, 932 S.W.2d 321 (1996); *Fayetteville Sch. Dist. No. 1 v. Arkansas State Bd. of Educ.*, 313 Ark. 1, 852 S.W.2d 122 (1993). Therefore, as the opponent of Act 739, McCutchen bears the burden of proving that the statute violates any of the provisions of the Arkansas Constitution. *Williams v. State*, 325 Ark. 432, 930 S.W.2d 297 (1996).

## 1. Amendment 14

■ For his first argument on appeal, McCutchen contends that Act 739 of 1995 violates Amendment 14 to the Arkansas Constitution which states that "[t]he General Assembly shall not pass any local or special act." In *Fayetteville Sch. Dist. No. 1 v. Arkansas State Bd. of Educ.*, 313 Ark. 1, 852 S.W.2d 122 (1993), we differentiated that "special" legislation arbitrarily separates some person, place, or thing, while "local" legislation arbitrarily applies to one geographic division of the state to the exclusion of the rest of the state. On appeal, McCutchen asserts that Act 739 is unconstitutional "local" legislation because it uses state funds for the sole benefit of Pulaski County.

■ Before resolving the merits of this issue, we must first clarify the appropriate standard of review to be applied to Amendment 14 challenges. McCutchen argues that the chancellor improperly applied the "rational basis" test instead of the "rational relationship" test. We find that this argument is merely a matter of semantics because this court has used the two phrases interchangeably, even within the same opinion. *See, e.g., Fayetteville, supra*; *Owen v. Dalton*, 296 Ark. 351, 757 S.W.2d 921 (1988).

■ McCutchen further asserts that if an act, on its face, applies to only one geographic subdivision of this state, it is *per se* unconstitutional·as a violation of Amendment 14. To the contrary, this court has repeatedly held that merely because a statute ultimately affects less than all of the state's territory does not necessarily render it local or special legislation. *Fayetteville, supra*; *City of Little Rock v. Waters*, 303 Ark. 363, 797 S.W.2d 426 (1990).

■ Instead, we have consistently held that an act of the General Assembly that applies to only a portion of this state is constitutional if the reason for limiting the act to one area is rationally related to the purposes of that act. *Fayetteville, supra*; *Owen, supra*; *Board of Trustees v. City of Little Rock*, 295 Ark. 585, 750 S.W.2d 950 (1988); *Streight v. Ragland*, 280 Ark. 206, 655 S.W.2d 459 (1983). Of particular interest, is *Phillips v. Giddings*, 278 Ark. 368, 646 S.W.2d 1 (1983), where we clarified that although there may be a legitimate purpose for passing the act, it is

the classification, or the decision to apply that act to only one area of the state, that must be rational.

■ By its clear terms, Act 739 of 1995 applies only to Pulaski County; hence, the relevant inquiry is whether there is a rational reason for applying this act to one county in this state. In making this determination, this court may look outside the act and consider any fact of which judicial notice may be taken to determine if the operation and effect of the law is local, regardless of its form. *Littleton v. Blanton*, 281 Ark. 395, 665 S.W.2d 239 (1984); *Webb v. Adams*, 180 Ark. 713, 23 S.W.2d 617 (1929).

■ The purpose of Act 739 of 1995 was to provide funds for the construction of a multipurpose civic center which would increase tourism, recreation, and economic development throughout the entire state. In order to achieve these purposes, Pulaski County could have been selected as a regional location for the civic center because of the following judicially noticed facts: 1) Pulaski County is the most populous county in the state; 2) Pulaski County is centrally located within the state; and 3) Pulaski County is the seat of state government. We cannot say that these reasons are either arbitrary or capricious. Moreover, as we noted in *Berry v. Gordon*, 237 Ark. 547, 376 S.W.2d 279 (1964), it is not the business of this court to second-guess the wisdom of the legislature. Therefore, we must conclude, as did the trial court, that the decision to construct the civic center in Pulaski County was rationally related to the intended purposes of Act 739 of 1995.

In reaching this decision we are not unmindful of *Humphrey v. Thompson*, 222 Ark. 884, 263 S.W.2d 716 (1954), where this court held that Act 273 of 1953, which appropriated funds for the construction of a vocational school in Perry County, was unconstitutional because it violated Amendment 14. As in this case, the General Assembly had a rational reason for wanting to create a vocational school. *Id.* This court, however, ruled that Act 273 was unconstitutional because we could find no reason why the General Assembly chose to locate the school in Perry County as opposed to any other county in the state. *Id.* In other words, the purpose of the act was rational, while the classification or discrimination against other counties in the state was not. As explained above,

this problem does not duplicate itself in Act 739 because there is a rational reason for locating the civic center in Pulaski County.

▪   In sum, because the decision to locate the civic center in Pulaski County was rationally related to the purposes of the Act, the trial judge properly concluded that Act 739 was not local legislation. Therefore, we affirm the trial court's ruling that Act 739 of 1995 does not violate Amendment 14 of the Arkansas Constitution.

### 2.   Article 5, Section 29

Next, McCutchen argues that Act 739 of 1995 violates Article 5, section 29, of the Arkansas Constitution, which declares that:

> No money shall be drawn from the treasury except in pursuance of specific appropriation made by law, the purpose of which shall be distinctly stated in the bill, and the maximum amount which may be drawn shall be specified in dollars and cents; and no appropriations shall be for a longer period than two years.

McCutchen maintains that Act 739 of 1995 violates this constitutional provision because it does not contain a distinct statement of its purpose.

In *Arkansas Game & Fish Comm'n v. Page*, 192 Ark. 732, 94 S.W.2d 107 (1936), this court reviewed Act 194 of 1935 which appropriated funds from the Arkansas Game and Fish Commission to the State Park Commission for the development of state parks. The lower court held that Act 194 was unconstitutional because it only stated the reason why the act was created instead of explaining *how* the funds would be used to develop parks within this State. *Id.* (Emphasis added.)

On appeal, the Park Commission explained that the funds would be used to acquire additional land for fish and game refuges at all state parks, and to aid in the completion of the Lonoke Fish Hatchery. *Id.* This court found that the Commission's explanation was:

> a pledge for the proper use of the money, but it also amounts to an admission or confession of a failure on the part of the attempted appropriation to state a specific purpose or general purpose of the appropriation.

*Id.* In other words, this court held that such an explanation needed to be contained in the act itself, and the failure to do so caused Act 194 to violate Article 5, section 29, of the Arkansas Constitution.

In contrast, in *Hooker v. Parkin*, 235 Ark. 218, 357 S.W.2d 534 (1962), this court upheld an act which appropriated roughly 83 million dollars to the Highway Commission for "maintenance, construction, repair . . . of all roads . . . in the State Highway System." Thus, from *Hooker* and *Page*, it appears that Article 5, section 29 requires appropriation acts to declare "how" the appropriated funds will be used instead of merely explaining "why" the funds were appropriated.

In this case, Act 739 announces that the purpose of the appropriation is to:

> assist local governments located in Pulaski County, Arkansas in defraying the cost associated with constructing and equipping a multi-purpose civic center.

1995 Ark. Act. 739, sec. 1(A). Thus, instead of merely saying that the appropriation will be used to increase tourism, recreation, and economic development, the Act "distinctly" states how it is going to accomplish these purposes: by defraying the cost of constructing and equipping a civic center in Pulaski County. Therefore, we agree with the trial court's conclusion that Act 739 does not violate Article 5, section 29, of the Arkansas Constitution.

### 3. Article 12, Section 12
### and
### Article 16, Section 2.

For his third argument on appeal, McCutchen asserts that the trial court erred in ruling that the appropriation made by Act 739 of 1995 is for a public purpose. In support of this argument, McCutchen merely quotes Article 16, section 2, of the

Arkansas Constitution which requires the General Assembly to pay the debts of the state, and Article 12, section 12, which declares that:

> Except as herein otherwise provided, the state shall never assume or pay the debt or liability of any county, town, city, or other corporation whatever, or any part thereof, unless such debt or liability shall have been created to repel invasion, suppress insurrection or to provide for the public welfare and defense.

McCutchen, however, fails to cite a single case as authority that Act 739 somehow violates either of these two constitutional provisions. Therefore, as we have explained in numerous opinions, we must affirm due to McCutchen's failure to cite any convincing legal authority in support of this point on appeal. *See, e.g., Newman v. State*, 327 Ark. 339, 939 S.W.2d 811 (1997); *Milam v. Bank of Cabot*, 327 Ark. 256, 937 S.W.2d 653 (1997).

### 4. Article 12, Section 5

Next, McCutchen claims that Act 739 of 1995 violates Article 12, section 5, of the Arkansas Constitution, which states that:

> No county, city, town or other municipal corporation shall become a stockholder in any company, association or corporation; or obtain or appropriate money for, or loan its credit to, any corporation, association, or institution or individual.

As mentioned previously, pursuant to Act 739, the Department of Finance and Administration paid 11 million dollars to Pulaski County, which in turn tendered the funds to the Facility Board. Thus, McCutchen claims, Pulaski County made an unconstitutional appropriation to a "company, association or corporation." This argument misconstrues the nature of the Facility Board.

Pursuant to the Public Facilities Boards Act, Pulaski County passed Ordinance 95-OR-64 thereby creating the Multi-purpose Civic Center Facility Board. The Public Facilities Boards Act clarifies that counties may create public facilities boards to carry out various county activities including, but not limited to, the ownership and construction of "recreation and tourist facilities." Ark. Code Ann. § 14-37-106 (Supp. 1995).

■ In *City of Paris v. Street Improvement Dist. No. 12*, 206 Ark. 926, 175 S.W.2d 199 (1943), this court explained that city improvement districts were not "companies, associations, or corporations" as contemplated by Article 12, section 5, but instead were the "municipality acting through an agency of its own creation." Likewise, facilities boards are not the type of company, association, or corporation contemplated by Article 12, section 5. Rather, facilities boards are agencies created by the counties to carry out various county activities. Therefore, we also affirm the chancellor's ruling on this point.

### 5. Article 12, Section 7

Finally, McCutchen argues that Act 739 of 1995 violates Article 12, section 7, of the Arkansas Constitution, which provides that:

> Except as herein provided, the State shall never become a stockholder in, or subscribe to, or be interested in, the stock of any corporation or association.

Because Act 739 of 1995 appropriates 20 million dollars to the Facilities Board, McCutchen asserts that the State has become a stockholder or an interested party in the Facility Board.

■ As admitted in McCutchen's reply brief, the state will never have any legal title to or interest in the civic center, nor will it have control over the Facility Board. Furthermore, the board is not issuing stock or any other type of ownership interest to the state in exchange for the 20 million dollar appropriation. Therefore, we also affirm the trial court's ruling on this constitutional challenge.

### 6. Attorney's Fees

Because we find that Act 739 is constitutional, the issue of whether McCutchen is entitled to attorney's fees is moot.

Affirmed.