Alton C. HALL, Ronald J. Hall, and James E. Burns *v.*
Jim Guy TUCKER, *et al.*; Junction City
School District, Intervenor

98-151                                    983 S.W.2d 432

Supreme Court of Arkansas
Opinion delivered January 21, 1999

*Pat Hall,* for appellants.

*Winston Bryant,* Att'y Gen., by: *Tim Humphries,* Sr. Asst. Att'y Gen., for appellees.

*Cathleen V. Compton,* for intervenor.

ROBERT L. BROWN, Justice. Appellants Alton C. Hall, Ronald J. Hall, and James E. Burns (hereinafter referred to jointly as Hall) appeal an order of summary judgment in favor of multiple state officials, including the Governor of the State, the State Board of Education, the State Department of Education, and the State Treasurer (hereinafter referred to jointly as Board of Education) and a second order in favor of the intervenor, Junction City School District. Alton Hall is a property owner and taxpayer in Union County. Ronald Hall and James Burns are certified school teachers in the Junction City School District. The crux of Hall's appeal is that the Arkansas statute permitting Louisiana school teachers to teach in a border school district without Arkansas certification (Ark. Code Ann. § 6-17-404 (Repl. 1993)) is special and local legislation. Hall further contends that the Junction City School District's allowance of in-kind services from Louisiana as per pupil contributions for the eighty-four Louisiana students educated in that school district was wrong and adversely affected the Arkansas students. We find no error in the trial court's two orders, and we affirm.

The Junction City School District #75 (School District) is located in Union County and is near the Louisiana border. For years, students from neighboring Claiborne Parrish and Union Parrish in Louisiana have attended school in the School District,

and the cost for educating those students has been borne primarily by Arkansas. On September 9, 1994, Hall filed a lawsuit to enjoin the Board of Education from violating the School Finance Act of 1984 and further to compel the Board of Education to prevent the misallocation of state-administered aid to the School District. Specifically, Hall sought to prevent the School District from including Louisiana students in the School District's average daily membership, which permitted the School District to receive Arkansas minimum foundation funds for the Louisiana students. He further complained that in the 1995-96 school year, Louisiana sent no money to defer the cost of educating its students but instead sent in-kind services, including teachers and two school buses. Following Hall's complaint, the School District was granted the right to intervene in the action.

The Board of Education then moved for summary judgment and asserted that the School Finance Act of 1984 had been repealed by the Equitable School Finance System Act of 1995, codified at Ark. Code Ann. §§ 6-20-301 through 322 (Supp. 1997). Hall amended his complaint and added the Junction City School Board as a party defendant. He alleged that for the 1996-97 school year, the amount spent in in-kind services by Louisiana was valued at approximately $3,200 for each Louisiana student whereas the contribution was about $4,000 for each Arkansas student. Hall complained that the diminished value attributable to the Louisiana in-kind services was diluting the funds spent by Arkansas on its own students. He further stated that the Board of Education had ordered the School District to stop including Louisiana students in its average daily membership in 1994 and that the practice had halted.[1] He also complained about various wrongful practices, including laying off two of the plaintiffs from their coaching jobs and replacing them with Louisiana coaches with less seniority. As a final point, he alleged wrongful conduct on the part of the School District's administration, including treating the Louisiana teachers more favorably regarding salary, retirement plans, and certification requirements. In his prayer for relief, Hall (1) prayed that Ark. Code Ann. § 6-17-404 (Repl. 1993), be

---

[1] Miscounting average daily membership is not an issue on appeal.

declared invalid and unconstitutional; (2) sought to enjoin the Board of Education from (a) allowing Louisiana employees to educate Arkansas students in the School District, (b) accepting in-kind educational services from Louisiana, (c) violating various Arkansas Code sections; (3) prayed for a writ of mandamus requiring the Board of Education to perform its duties imposed by law; and (4) sought a judgment for any money fraudulently obtained. After filing his amended complaint, Hall moved for summary judgment and asserted that there were no issues of material fact surrounding the in-kind services from Louisiana and that he was entitled to an injunction to stop the acceptance of these services.

The trial court granted summary judgment to the Board of Education. In doing so, the trial court found that Ark. Code Ann. § 6-17-404 (Repl. 1993) was constitutional under the rational-basis test; that the Board of Education had no statutory duty to monitor or prohibit the School District's receipt of in-kind services from Louisiana; and that the requests for injunctive relief against the Board of Education were essentially petitions for writs of mandamus and outside a chancery court's jurisdiction. The trial court refused to grant summary judgment on whether the School District was properly receiving in-kind contributions from Louisiana because the issue involved questions of disputed fact.

The issue of in-kind contributions was set for a hearing, and the School District filed a motion *in limine*, requesting that the trial court prohibit Hall and his witnesses from referring to any of the other matters raised in the amended complaint that were disposed of by the summary-judgment order. The trial court granted the motion. After a hearing, the court found in favor of the School District and concluded that Hall had put forth no proof that the in-kind services from Louisiana, with a value of approximately $3,200 per student, materially and adversely affected the Arkansas students.

## I.  *Summary Judgment*

Hall first contends, generally, that the trial court incorrectly granted summary judgment in favor of the Board of Education.

In his argument on appeal, he incorporates all of the grievances he has amassed against the Board of Education and the School District and concludes that his motion for summary judgment should have been granted and the Board of Education's motion denied. In making this claim, he argues that the trial court erred in finding no genuine issues of material fact.

We recently summarized the major legal principles we use when reviewing a summary-judgment order:

> In these cases, we need only decide if the granting of summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion left a material question of fact unanswered. The burden of sustaining a motion for summary judgment is always the responsibility of the moving party. All proof submitted must be viewed in a light most favorable to the party resisting the motion, and any doubts and inferences must be resolved against the moving party. Our rule states, and we have acknowledged, that summary judgment is proper when a claiming party fails to show that there is a genuine issue as to a material fact and when the moving party is entitled to summary judgment as a matter of law.

*Milam v. Bank of Cabot*, 327 Ark. 256, 261-262, 937 S.W.2d 653, 656 (1997) (*quoting Renfro v. Adkins*, 323 Ark. 288, 295, 914 S.W.2d 306, 309-310 (1996) (internal citations omitted)). Bearing these principles in mind, we turn to Hall's specific arguments.

## II. Special or Local Legislation

Hall claims that the trial court erred in its decision that Ark. Code Ann. § 6-17-404 (Supp. 1997) was not special or local legislation. We disagree.

Amendment 14 of the Arkansas Constitution contains this proscription: "The General Assembly shall not pass any local or special act." Local legislation is legislation that is arbitrarily applied to only one geographic area of the state, while special legislation arbitrarily separates from the operation of an act some person, place, or thing from another. *See Boyd v. Weiss*, 333 Ark. 684, 971 S.W.2d 237 (1998); *Fayetteville Sch. Dist. No. 1 v. Arkansas State Bd. of Educ.*, 313 Ark. 1, 852 S.W.2d 122 (1993). Arkan-

sas statutes are presumed constitutional, and the party attacking a statute has the burden of showing that the challenged statute clearly violates the Arkansas Constitution. *See Boyd v. Weiss, supra; McCutchen v. Huckabee,* 328 Ark. 202, 943 S.W.2d 225 (1997).

The fact that a statute ultimately affects less than all of the state's territory does not *per se* render it local or special legislation. *See McCutchen v. Huckabee, supra; City of Little Rock v. Waters,* 303 Ark. 363, 797 S.W.2d 426 (1990). We have consistently held that a statute that applies to only one area of the state is constitutional if the reason for limiting the statute to one area is rationally related to the purposes of that statute. *See McCutchen v. Huckabee, supra; Fayetteville Sch. Dist. No. 1 v. Arkansas State Bd. of Educ.,* 313 Ark. 1, 852 S.W.2d 122 (1993). What we review is whether the decision to apply the act to only one area of the state is rational. *See McCutchen v. Huckabee, supra.* The rational-basis standard presumes the rationality of the statute, which when applied to social and economic legislation can only be overcome by a clear showing of arbitrariness. *See Kadrmas v. Dickinson Public Schools,* 487 U.S. 450 (1988). We may also go beyond the legislation and take judicial notice of facts relevant to whether the act's operation and effect are local. *See McCutchen v. Huckabee, supra; Littleton v. Blanton,* 281 Ark. 395, 665 S.W.2d 239 (1984).

We turn then to § 6-17-404, which reads:

> Any person licensed as a school teacher or administrator in an adjoining state, who serves as a teacher or administrator in any public school in this state located in a county having a population of at least forty-two thousand (42,000) but not more than forty-seven thousand (47,000) according to the 1970 federal Decennial Census and having an intermix of students from Arkansas and an adjoining state, and who is compensated for services in this state by an adjoining state or school district or districts in such adjoining state, shall without further qualification be allowed to serve in such school in a capacity for which qualified in the adjoining state without affecting the rating of the school.

The population parameters of § 6-17-404 indicate that the statute may well be limited to one county of the state. Nevertheless, Hall offered no proof on that point, and we will not engage in speculation or conjecture about whether other Arkansas

counties are affected. Moreover, whether the application of § 6-17-404 is limited to one geographic area is largely irrelevant to our decision because we agree with the trial court that the statute is rationally related to Arkansas's interest in assisting one or more border school districts to obtain teachers from adjoining states and thereby foster better education for all students. Nor do we view the fact that a neighboring state may have different certification requirements or a dissimilar retirement plan as a reason for concluding that § 6-17-404 is arbitrary or capricious.

■ Hall goes further and questions whether in fact § 6-17-404 assists a border school district to obtain teachers. He points to his experience with the School District and argues that Arkansas teachers are replaced by teachers not certified by this State. This at least, he urges, raises a fact question regarding the rational basis behind § 6-17-404. We disagree. Hall's burden was to show that a statute which is presumed constitutional *clearly* violated the Arkansas Constitution as local or special legislation. We hold that a rational basis exists for this law affecting border school districts and that Hall's allegations of improper teacher replacements do not undermine or invalidate the legitimate purposes behind the statute.

On a related point, Hall argues that § 6-17-404 is unconstitutional because it allows the School District, in its sole discretion, to prescribe who it can educate and who it can use as teachers and to place a value on in-kind services. According to Hall, the effect of this is an impermissible exercise of legislative authority by an administrative body to arbitrarily set school-funding requirements and place values on in-kind services. The Board of Education answers in its brief that there are guidelines in the statute which have the effect of limiting local authority: the out-of-state teacher must be licensed in an adjoining state, the public school must be located in a county with a population of at least 42,000 but no more than 47,000, and the county must have an intermix of children from Arkansas and an adjoining state.

■ We decline to reach the issue of a wrongful exercise of legislative authority because the record and abstract do not reveal that Hall ever obtained a ruling from the trial court on this precise

issue. As a result, we will not decide the question for the first time on appeal. *See Jackson v. State*, 334 Ark. 406, 976 S.W.2d 370 (1998); *C.H. v. State*, 333 Ark. 613, 973 S.W.2d 477 (1998). Hall also contends that § 6-17-404 is unconstitutionally vague, but, again, he failed to obtain a trial court ruling on this specific question, and we decline to decide the issue. *See id.*

### III. *Motion* in Limine

Hall next argues that the School District's motion *in limine* was improperly granted because it limited the evidence that he could introduce at the hearing on in-kind services following the summary-judgment order. This argument is meritless. The trial court's decision to limit evidence to matters not already decided appears eminently sensible. Moreover, it is well within the province of the trial court to limit testimony to the issue at hand. We have often emphasized the importance of a trial court's controlling the orderly progression of matters before that court. *See Solomon v. State*, 323 Ark. 178, 913 S.W.2d 288 (1996); *Cook v. State*, 316 Ark. 384, 872 S.W.2d 72 (1994). That is precisely what the trial court did with its ruling.

### IV. *In-Kind Services*

For his final point, Hall claims that the trial court should have found that the Louisiana in-kind services, which represented contributions on behalf of the Louisiana students adversely impacted the Arkansas students in the School District. According to testimony, the services provided from Louisiana to educate eighty-four Louisiana students in school year 1996-97 were eight teachers, one bus driver and bus, material for the bus, paper, and library books. We first observe that the trial court issued an opinion with findings of fact. Our standard of review for a trial court's findings of fact is whether the findings are clearly against the preponderance of the evidence. Ark. R. Civ. P. 52(a). In this regard, due regard should be given to the trial court's opportunity to evaluate the credibility of witnesses. *See Ford Motor Credit Co. v. Ellison*, 334 Ark. 357, 974 S.W.2d 464 (1998).

It is true that the per student value placed on Louisiana's in-kind services was $3,200 while the per student Arkansas

contribution was $4,000. The trial court, however, justified the disparity with the following reasoning. The court first pointed out that Claiborne Parrish in Louisiana contributed eight teachers to the School District, five of which were used to meet Arkansas standards. Without these teachers, the trial court found that courses would be deleted from School District curriculum and class sizes increased. Alternatively, if new teachers were hired to replace the Louisiana teachers, funds would have to be redirected from other services. The trial court then concluded:

> The Plaintiff presented no proof that the Claiborne Parrish in-kind contribution, which is less than the Arkansas per student contribution, materially and adversely affects the Arkansas students. As Mr. Kelly stated, JCSD could absorb all eighty-four (84) Claiborne Parrish students in its school district without much additional cost. The Claiborne Parrish students are distributed throughout the school district from kindergarten through the twelfth grade. The contributions made by Claiborne Parrish allow[s] the JCSD to redirect its own resources in a manner that benefits directly the Arkansas students by providing additional elective courses. Without the contribution from Claiborne Parrish, the Arkansas funds would have to be used to meet the Arkansas standards currently paid for by Claiborne Parrish. The State Department of Education has audited the in-kind contributions for 1995 and 1996 and has not objected to the use of in-kind contributions.

In short, the trial court spelled out the benefits derived from the Louisiana in-kind services and, particularly, the Louisiana teachers, while also detailing the drawbacks if the services were not available. In effect, the disparity in per student contributions was resolved by these tangible benefits. The trial court further underscored the fact that no proof was offered on how Arkansas students were damaged by using these in-kind services as a contribution for educating the Louisiana students. On the contrary, as already pointed out, the Arkansas students derived a clear benefit, in the court's opinion. The trial court concluded that should the disparity in the Louisiana in-kind services and the Arkansas contributions become such that Arkansas students did indeed suffer, the issue could be revisited. We discern no error in the trial court's findings or conclusions.

Affirmed.