The Honorable Kim Hendren State Senator 1501 Highway 72 Southeast Gravette, AR 72736
Dear Senator Hendren:
I am writing in response to your request for my opinion on the following questions:
 1. Is Northwest Arkansas Community College considered "located" within the City of Rogers for the purpose of determining whether the city might provide the college financial aid pursuant to ACA 14-58-504 and -505, because the College's district includes the City of Rogers, notwithstanding the physical location of the College's facilities in the City of Bentonville?
 2. Are 14-58-504 and -505 constitutional under Art. 12, Sec. 5 of the Arkansas Constitution?
RESPONSE
In my opinion, the answer to your first question is "no," and the answer to your second question is, in all likelihood, "yes."
Question 1: Is Northwest Arkansas Community College considered "located"within the City of Rogers for the purpose of determining whether the citymight provide the college financial aid pursuant to ACA 14-58-504 and-505, because the College's district includes the City of Rogers,notwithstanding the physical location of the College's facilities in theCity of Bentonville?
In my opinion, the answer to this question is "no."
The voters authorized the establishment of community college districts by adopting Ark. Const. amend. 52, which provides:
 The General Assembly may by law provide for the establishment of districts for the purpose of providing community college instruction and technical training. The General Assembly shall prescribe the method of financing such community college and technical institutes, and may authorize the levy of a tax upon the taxable property in such districts for the acquisition, construction, reconstruction, repair, expansion, operation, and maintenance of facilities therefore.
The enabling legislation for the formation of such districts is codified at A.C.A. § 6-61-501 et seq. (Repl. 1996 Supp. 2003).
With respect to municipal grants of aid to community colleges, A.C.A. §§14-58-504 and -505 (Repl. 1998) provide as follows:
 (a) Cities of the first or second class and incorporated towns in the State of Arkansas shall be empowered and authorized annually to grant financial aid to any state-supported college or university which is located in the city or town or which has facilities located within the city or town. The grant of financial aid shall be for the purpose of aiding or assisting the college or university in retiring any bonded indebtedness on any building or facilities within the city or town or for the purpose of paying for the operating expenses of the college or university for programs or facilities located within the city or town.
 (b)(1) The governing body of the city or incorporated town granting financial aid to a state-supported college or university shall do so by ordinance, which shall specify the time and amount of the payments to be made, the name of the college or university receiving the funds, and the source of the funds.
 (2) The ordinance shall not be effective for more than a twelve-month period of time.
 (c) The financial aid granted and paid to the state-supported college or university shall be paid out of donations or gifts received by the city or town for general purposes. No moneys of the city or town arising from a tax levied for a specific purpose shall be used for any grant of financial aid to a college or university, unless the tax has been levied for the specific purpose of granting financial aid to the college or university.
A.C.A. § 14-58-504 (emphasis added).
 (a) Incorporated towns and cities of the first or second class, pursuant to an ordinance properly and lawfully adopted by their governing bodies, are empowered and authorized to annually grant financial aid to any public postsecondary educational institution located within their borders for the purpose of assisting the institution in paying its lawful expenses of operation.
 (b) The ordinance shall be effective for a period of twelve (12) months.
A.C.A. § 14-58-505 (emphasis added).[1]
As the Arkansas Supreme Court noted in State v. Pinell, 353 Ark. 129,134, 114 S.W.3d 175 (2003):
 As in all statutory construction cases, the cardinal rule is to give full effect to the will of the legislature. Flowers v. Norris, 347 Ark. 760, 765, 68 S.W.3d 289, 292 (2002) ("It is . . . axiomatic that in statutory interpretation matters, we are first and foremost concerned with ascertaining the intent of the General Assembly.") (citing State v. Havens, 337 Ark. 161, 987 S.W.2d 686 (1999)). A statute is construed just as it reads, giving the words their ordinary and usually accepted meaning in common language. Edwards v. State, 347 Ark. 364, 64 S.W.3d 706 (2002). Nothing is taken as intended that is not clearly expressed. State ex rel. Sargent v. Lewis, 335 Ark. 188, 979 S.W.2d 894 (1998).
Applying these principles of statutory construction, I believe A.C.A. §14-58-504 is unambiguous in restricting municipal grants of financial aid to a community college to an institution that is either located within or that has facilities within the municipal borders. Section 14-58-505 is likewise unambiguous in declaring that a municipality may grant a community college financial aid pursuant to that statute only if the institution is located within the municipal borders. If the legislature had intended to authorize a municipality to grant financial aid to any community college whose district embraces the municipality, regardless of whether the institution is located within the municipality, the legislature would have said so. Assuming, as seems logical, that improvements to community-college facilities anywhere within a district would benefit the entire district, I believe the legislature could, if it so chose, authorize municipalities to provide financial aid to the community college to be used anywhere within the district. However, in my opinion, the legislature has not authorized such grants.
Question 2: Are 14-58-504 and -505 constitutional under Art. 12,Sec. 5 of the Arkansas Constitution?
In my opinion, the answer to this question is, in all likelihood, "yes."
Article 12, § 5 of the Arkansas Constitution provides:
 No county, city, town or other municipal corporation shall become a stockholder in any company, association or corporation; or obtain or appropriate money for, or loan its credit to, any corporation, association, institution or individual.
With respect to donations of public funds to public entities like Northwest Arkansas Community College, one of my predecessors observed in Ark. Op. Att'y Gen. No. 98-025:
 Although the parameters of the prohibitions of Article 12, § 5, as that section is currently interpreted by the Arkansas Supreme Court, are somewhat unclear in certain contexts, it appears that the provision does not prohibit a governmental donation to a purely public entity that serves a purely public purpose. The court has never struck down such a donation as being violative of Article 12, § 5. See, e.g., McCutchen v. Huckabee, 328 Ark. 202, 943 S.W.2d 225 (1997); City of Paris v. Street Improvement District No. 2, 206 Ark. 926, 175 S.W.2d 199 (1943); Shofner v. Dowell, 168 Ark. 229, 269 S.W.2d 588
(1925); see also Hogue v. Housing Authority of North Little Rock, 201 Ark. 263, 144 S.W.2d 49
(1940). Moreover, this office has consistently opined that governmental donations to public entities in all likelihood do not violate Article 12, § 5. See, e.g., Ops. Att'y Gen. Nos. 96-287, 95-139, 94-147, 94-058, 93-274, 92-250, 92-099, 91-077, and 91-015.
(Footnote omitted.)
With respect to the question of what constitutes a "public purpose" in compliance with article 12, § 5, my predecessor observed in Ark. Op. Att'y Gen. No. 91-410:
 [T]he broad, but often difficult to define "public purpose" doctrine . . . generally requires that the expenditure of public funds be for a "public purpose." See generally Chandler v. Board of Trustees of the Teacher Retirement System of the State of Arkansas, 236 Ark. 256, 365 S.W.2d 497 (1963), and cf. specifically South Carolina Op. Att'y. Gen. issued April 24, 1987. It has been stated as regards this doctrine that "[n]o expenditure can be allowed legally except in a clear case where it appears that the welfare of the community and its inhabitants is involved and direct benefit results to the public." McQuillin, Municipal Corporations, § 12, 190. The determination of whether a particular expenditure is for a "public purpose" is to be made by the legislature. Although ultimately the propriety of a particular expenditure is resolved by the judiciary, great weight must be given legislative declarations of public purposes. Turner v. Woodruff, 286 Ark. 66, 698 S.W.2d 527 (1985).
In applying these principles, I am struck by the fact that the two statutes referenced in your question clearly amount to "legislative declarations of public purposes," as referenced in the final sentence of the passage just quoted. Compare Ark. Op. Att'y Gen. No. 98-025 (opining that "[p]ublic school districts are clearly public entities that perform a public function, rather than a private one," and that "the establishment and maintenance of schools is a municipal purpose").
In Ark. Op. Att'y Gen. No. 1999-408, after extensively reviewing the Arkansas Supreme Court's pronouncements on the subject of when a municipality might award grants of financial aid, another of my predecessors drew the following tentative conclusions:
 [A]ny use of county [or city] moneys for charitable purposes may well pass constitutional muster if the use serves a public purpose or achieves a governmental function, so long as the recipient can be characterized as "public". . . . As the law currently stands, there appears to be some element of fiat in the Supreme Court's pronouncements regarding what pledges of municipal or county funds will be permitted. As established in McCutchen, [supra], it is clearly permissible, for instance, to contribute to a facilities board, which, despite not being a straightforward municipal agency, has a statutory pedigree and has been identified as a category of entity beyond the contemplation of article 12, § 5. In the wake of Venhaus,[2]
however, it is clearly impermissible to contribute to a private nonprofit corporation like the AIDC. Perhaps the most that can be said is that if an entity is authorized by statute and is not organized as a private nonprofit corporation, and especially if the donations themselves are authorized by statute, a donation of county or municipal funds may be constitutional. These principles reflect a clear move by the Court to reassert that public moneys may only be put to public use.
(Emphasis added.) Although the analysis of whether a particular entity meets these criteria is one of fact, which I lack the information and authority to undertake, I believe a reviewing court would be strongly influenced to approve the grants, given that Northwest Arkansas Community College is indisputably a public institution and that the legislature has expressly provided that, as such, it might receive donations of municipal funds.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JD/cyh
[1] With respect to counties, identical legislation is codified at A.C.A. § 14-16-114.
[2] City of Little Rock v. Venhaus, 302 Ark. 204, 788 S.W.2d 478 (1990) (reversing a trial court's distribution to private nonprofit corporations of residuals remaining from an illegal exaction after the chancellor had distributed proceeds from the common fund to identified taxpayers).