The Honorable Philip Jackson State Representative 4015 Highway 143 Berryville, AR 72616-4691
Dear Representative Jackson:
I am writing in response to your request for my opinion regarding the following question:
 Arkansas Code 26-75-701 et seq. As written, the criteria used in that subchapter can only apply to one city in Arkansas, namely Eureka Springs. Could you please look at that subchapter, and opine whether or not it conflicts with either Art. 5, Section 25 or Amendment 14 of the Constitution Of The State Of Arkansas.
RESPONSE
As an initial matter, I must question your factual representation that the provisions of A.C.A. § 26-75-701 through -705 (Repl. 1997 Supp. 2003) "can only apply to one city in Arkansas, namely Eureka Springs." Section 26-75-701 of the Arkansas Code provides in pertinent part:
 (a) Any city of the first class having a population of fewer than five thousand (5,000) inhabitants, a portion of which has been designated as a historic district and is included on the National Register of Historic Places, by ordinance of its governing body, may levy a tax not to exceed two percent (2%) upon the gross receipts or gross proceeds from: [a list of sources].
My inquiries reveal that seven cities of the first class in Arkansas other than Eureka Springs have fewer than 5,000 inhabitants and contain properties listed on the National Register of Historic Places: Berryville, DeWitt, Dermott, Eudora, Gentry, Hamburg and Lake Village. Although I am unaware whether any one of these cities contains an historic district as authorized in the Historic District Act, A.C.A. §14-172-201 through -212 (Repl. 1998), or whether any one contains a National Register of Historic Places Historic District as certified by the United States Department of the Interior, see A.C.A. §14-172-203(2), the city council of any one of these cities, with the approval of a majority of the property owners within the proposed district, could form an historic district under the terms of the A.C.A. §§ 14-172-203 and -207 and thereafter levy the tax referenced in the above quoted statute. The subchapter consequently has a broader scope than your question suggests.
Article 5, § 25 of the Arkansas Constitution, which you reference in your request, provides:
 In all cases where a general law can be made applicable no special law shall be enacted; nor shall the operation of any general law be suspended by the Legislature for the benefit of any particular individual, corporation or association; nor where the courts have jurisdiction to grant the powers or the privileges or the relief asked for.
Amendment 14 of the Arkansas Constitution, which you likewise reference in your request, provides:
 The General Assembly shall not pass any local or special act. This amendment shall not prohibit the repeal of local or special acts.
Although the Publisher's Notes to both Article 5, § 25 and Amendment 14 provide that the latter constitutional provision may supersede the former, the Arkansas Supreme Court has applied Article 5, § 25 since the adoption of Amendment 14 in 1926. See, e.g., Haase v. Starnes, M.D.,323 Ark. 263, 274, 915 S.W.2d 675 (1996) (entertaining an Article 5, § 25 challenge in a case that did not rely on Amendment 14). In Laman, Mayorv. Harrill, 233 Ark. 967, 969-70, 349 S.W.2d 814 (1961), the court discussed as follows the interplay between these two constitutional provisions:
 Section 25 above quoted left it largely a matter of legislative determination as to the applicability of special and general laws and much legislation which was special or local was passed from time to time.
The dissatisfaction of the people with that practice crystallized in the adoption of Amendment 14 to the Constitution which reads as follows:
 "Local or special acts prohibited — Right to repeal acts by legislature. — The General Assembly shall not pass any local or special act. This amendment shall not prohibit the repeal of local or special acts."
This amendment is short and unambiguous — it bars local legislation.
Notwithstanding the bluntness of the concluding clause in this passage, the Arkansas Supreme Court has interpreted the terms "local" and "special" as used in the constitution in a way that is not quite so categorical:
 An act is special if, by some inherent limitation or classification, it arbitrarily separates some person, place, or thing from those upon which, but for such separation, it would operate, and the legislation is local if it applies to any division or subdivision of the state less than the whole. Hall v. Tucker, 336 Ark. 112, 983 S.W.2d 432 (1999); Fayetteville Sch. Dist. v. Arkansas State Bd. of Educ., 313 Ark. 1, 852 S.W.2d 122 (1993); Owen v. Dalton, 296 Ark. 351, 757 S.W.2d 921
(1988). Merely because a statute ultimately affects less than all of the state's territory does not necessarily render it local or special legislation. Boyd v. Weiss, 333 Ark. 684, 971 S.W.2d 237 (1998); Littleton v. Blanton, 281 Ark. 395, 665 S.W.2d 239 (1984). Instead, we have consistently held that an act of the General Assembly (or, as here, an administrative agency) that applies to only a portion of the state is constitutional if the reason for limiting the act to one area is rationally related to the purposes of that act. McCutchen v. Huckabee, 328 Ark. 202, 943 S.W.2d 225 (1997). Although a law may be limited in effect only to a few classifications, it is not necessarily special or local legislation if the classification is not arbitrary and bears a reasonable relation to the purpose of the law. Foster v. Jefferson County Bd. of Election Comm'rs, 328 Ark. 223, 944 S.W.2d 93
(1997).
Arkansas HSC v. Regional Care Facilities, Inc., 351 Ark. 331, 339,93 S.W.3d 672 (2002). In elaborating on this "rational basis" test of legislation challenged as being special or local, the court in ArkansasHSC observed:
 Further, it is not the court's role to discover the actual basis for the legislation; rather, our role is merely to consider if any rational basis exists which demonstrates the possibility of a deliberate nexus with state objectives so that the legislation is not the product of utterly arbitrary and capricious government and void of any hint of deliberate and lawful purpose.
As the court noted in Hall v. Tucker, 336 Ark. 112, 118, 983 S.W.2d 432
(1999):
 The rational-basis standard presumes the rationality of the statute, which when applied to social and economic legislation can only be overcome by a clear showing of arbitrariness.
Specifically with respect to classifying on the basis of population, as the legislature has done in A.C.A. § 26-75-701, the Arkansas Supreme Court has offered the following analysis of Amendment 14's effect:
 "We do not think that it was intended to do away with the classification of counties, cities and towns according to population or the topography of the country where such classification rests upon substantial differences in situation and needs. The amendment was intended to prevent arbitrary classification based on no reasonable relation between the subject-matter of the limitation and classification made. In determining whether a law was general or local, the Legislature might still make the classification where it was appropriate and germane to the subject, and was based upon substantial differences which make one situation different from another. The classification of counties and municipalities is legitimate when population or other basis of classification bears a reasonable relation to the subject of the legislation, and the judgment of the Legislature in the matter should control unless the classification is arbitrary or is manifestly made for the purpose of evading the Constitution."
Bollinger v. Watson, 187 Ark. 1044, 1049, 63 S.W.2d 642 (1933), quotingSimpson v. Matthews, 184 Ark. 213, 216, 40 S.W.2d 991 (1931). The court has specifically stricken classifications based upon population in instances where the classification had nothing to do with the subject matter of the law. See, e.g., Owen v. Dalton, 296 Ark. 351, 354,757 S.W.2d 921 (1988); Knoop v. City of Little Rock, 277 Ark. 13,638 S.W.2d 670 (1982); Board of Trustees, University of Ark. v. PulaskiCounty, 229 Ark. 370, 315 S.W.2d 879
(1958); Hensley v. Holder, 228 Ark. 401,307 S.W.2d 794 (1957); Ark. Op. Att'y Gen. No. 97-139 (opining that a population-based classification was impermissible when "the Act provide[d] no specific enlightenment as to the legislature's purpose in creating" the classification). However, classifications based upon population are not inherently invalid and can be upheld if they bear a rational relation to the purpose of the law. See, e.g., Lovell v. Democratic CentralCommittee of Pulaski County, 230 Ark. 811, 327 S.W.2d 387 (1959); Murphyv. Cook, 202 Ark. 1069, 155 S.W.2d 330 (1941).
Applying the foregoing, I will note that the legislature has directed that any tax levied pursuant to A.C.A. § 26-75-701 be credited to the city's advertising and promotion fund. A.C.A. § 26-75-705. The upshot of this subchapter, then, is to authorize smaller cities of the first class that contain an historic district included in the National Register of Historic Places to impose an additional tax to fund advertising and promotion. The legislative purpose to assist the advertising and promotion of these cities is reflected in the emergency clause of identical Acts 1985, Nos. 478 and 696, which provides in pertinent part:
 It is found and determined by the General Assembly that cities of the first class of this State, as defined in this Act, are in need of additional monies for the advertising and promotion of said cities, and to enable said cities to establish facilities to attract tourists, and that the immediate passage of this Act is necessary in order to enable cities to provide for a levy of a two percent (2%) tax upon the gross receipts or gross proceeds derived from the sale of tangible personal property sold by gift shops in such cities in addition to taxes now authorized to be levied in Act 185 of 1965, as amended. . . .
In my opinion, there is nothing arbitrary and unreasonable about the legislature's thus making available to smaller, and presumably less affluent, cities containing historical attractions an additional source of revenue to be devoted to advertising and promotion.
With respect to the scope of the legislation, my use of the plural "cities" in the preceding sentence is deliberate and, to my mind, significant. As noted at the beginning of this opinion, I believe that even if the tax classification at issue currently affects only one city, given the circumstances that obtain now, a number of other cities could become authorized to impose the tax simply by forming historic districts. It is well established that legislation that applies only to one city or county will not be stricken if the legislation is rationally based and prospective inasmuch as other cities or counties might fall within the scope of the legislation at some point in the future. SeeArkansas Health Services Commission v. Regional Care Facilities, Inc.,351 Ark. 331, 344-45, 93 S.W.3d 672 (2002).
To be sure, legislation that can affect only one city or county has frequently been stricken in the past. As the court noted in Littleton v.Blanton, 281 Ark. 395, 405, 665 S.W.2d 239 (1984):
 Where the class employed to limit the application of an act consists of a single county, city or district, this Court has often concluded that the act is special or local within the meaning of Amendment 14. See, for example, State ex rel. Burrow v. Jolly, County Judge, 207 Ark. 515, 181 S.W.2d 479 (1944); Simpson v. Matthews, supra; McLellan v. Pledger, County Treasurer, 209 Ark. 159, 189 S.W.2d 789 (1945); Street Improvement Districts Nos. 581 and 585 v. Hadfield, 184 Ark. 598, 43 S.W.2d 62 (1931); and Laman, Mayor v. Harrill, 233 Ark. 967, 349 S.W.2d 814 (1961).
However, the reasoning underlying the court's action in each of the cited cases was that no rational basis existed for restricting the legislation's operative effect to one city. For instance, in Littleton,
this principle prompted the court to strike legislation authorizing a city of the first class having limited means to establish a uniquely structured municipal court so long as the city lacked a local attorney and the county in which the city was located had no fewer than 26,500 and no more than 28,000 inhabitants according to the 1970 federal census — conditions that only applied to Poinsett County. Id. at 404. I see no such infirmity in A.C.A. § 26-75-701, which creates a general category that has been rationally distinguished from other categories.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB: JD/cyh