Richard WEISS, Director of the Department of Finance and
Administration *v.* CENTRAL FLYING SERVICE, INC.

96-151                                    934 S.W.2d 211

Supreme Court of Arkansas
Opinion delivered November 24, 1996

*Beth B. Carson,* Revenue Legal Counsel, for appellant.

*Wright, Lindsey & Jennings,* by: *John R. Tisdale* and *Troy A. Price,* for appellee.

TOM GLAZE, Justice. Appellee Central Flying Service, Inc., is in the business of buying, selling, and leasing aircraft. Relevant to this case, Central purchased five airplanes which it held for resale. Under Ark. Code Ann. § 26-52-409 (Supp. 1995), Central was authorized to rent or lease these five airplanes for a period not to exceed one year from the date of purchase, and during that one-year period, it was exempt from paying a sales or use tax. None of the airplanes were resold until more than one year after their purchase. As a consequence, appellant Department of Finance and Administration assessed gross receipts tax on Central's purchase of the aircraft and requested payment.[1] Central responded that, while

---

[1] Short-term rental taxes were also assessed on Central's rental of the aircraft, but these taxes are not at issue in this appeal.

§ 26-52-409 established Central's liability for sales tax on the aircraft purchases at the end of the one-year period, the tax was not actually payable until each airplane was sold to another purchaser.

After disputing payment of the tax assessment, Central paid the assessment under protest and filed its complaint for refund in the Pulaski County Chancery Court, which held in Central's favor. DF&A appeals the chancellor's determination, and its sole argument for reversal asserts that § 26-52-409 provides that the gross receipts tax on the purchase of an airplane used for rental or charter service and held for more than one year without resale must be paid immediately after the lapse of one year from the date of purchase. We conclude DF&A's argument is correct; therefore we reverse the chancellor.

■ DF&A's and Central's arguments center on their respective interpretation of § 26-52-409, but we first allude to other statutory gross-receipts tax provisions which are helpful to an understanding of the terms and provisions contained in § 26-52-409. Thus, we initially note that the sale of all tangible personal property is generally taxable unless an exemption applies. Ark. Code Ann. § 26-52-301 (Supp. 1995). With respect to a purchaser regularly engaged in the business of reselling items purchased, a sale for resale exemption is provided which relieves him of paying tax on such purchases. See Ark. Code Ann. § 26-52-401(12)(A) (Supp. 1995). However, if that purchaser withdraws and uses an item from his inventory rather than resell it, such an event constitutes a withdrawal from stock and the purchaser is deemed the consumer. Georgia Pacific Corp. v. Lay, 242 Ark. 428, 413 S.W.2d 868 (1967). Items withdrawn from stock become subject to gross-receipts tax, usually based on the purchase price of the items used. Ark. Code Ann. § 26-52-103(a)(4) (Supp. 1995). Once an item is withdrawn from stock, the protection of the resale exemption is lost, and the tax is due on or before the 20th of the month following the month in which the items or goods were withdrawn. Ark. Code Ann. § 26-52-501 (Supp. 1995).

■ In 1975, the General Assembly enacted § 26-52-409 which was obviously intended to give aircraft dealers, such as Central, some tax relief. Before enactment of § 26-52-409, a dealer who purchased a plane exempt from tax as a sale for resale, but who withdrew it from inventory for use in his business would have been required to pay the tax based on the purchase price of the plane,

and the tax was due in the month following the plane's withdrawal from inventory. After § 26-52-409 was enacted, an aircraft dealer who purchases a plane for resale can now use it for rental or charter service without payment of sales or use tax for a period not to exceed one year from its purchase date. *See* § 26-52-409(a)(1). The full relevant text of § 26-52-409 reads as follows:

> (a)(1) Any person . . . engaged in the business of selling aircraft in this state . . . may purchase aircraft exempt for resale and use the aircraft for rental or charter service without payment of sales or use tax for a period of not to exceed one (1) year from the date of purchase of the aircraft.
>
> * * *
>
> (b) The use of the aircraft for rental or charter during the applicable one-year . . . holding period . . .
> shall not constitute a withdrawal from stock, and the purchaser shall not be required to pay the sales tax on the purchase price of the aircraft held in stock and used for such purposes.
>
> (c) The aircraft purchaser shall collect and remit gross receipts and short-term rental tax on the rentals and shall subsequently collect and remit the gross receipts tax on the aircraft at the time of subsequent sale in the manner required by law.
>
> (d) If the purchaser fails to sell the aircraft during the applicable holding period, the purchaser shall be liable for sales or use tax on his purchase price of the aircraft.

Provision (b) above provides that an aircraft dealer's renting or chartering a plane during the prescribed one-year holding period does not constitute a withdrawal from stock, and he is not required to pay the sales tax on the plane's purchase price. However, under (d) above, if the dealer-purchaser fails to sell the aircraft during the one-year holding period, he shall be liable for the tax based upon the price he paid for the aircraft. Central argues that, under provision (d), it becomes *liable* for the sales tax based upon its purchase price of the aircraft, but it disagrees that it must remit payment immediately after its liability accrues. Instead, Central argues provision (c)'s language suggests such taxes must be collected and remitted at the time of the subsequent sale. Central further submits that,

since the airplanes at issue were not sold during the assessment period in this case, the chancellor correctly held DF&A prematurely imposed and collected tax from Central. Central contends its interpretation of § 26-52-409 is supported by DF&A's own regulation, Gross Receipts Tax Regulation 14(F), which reads as follows:

### F. AIRCRAFT RENTAL

1. Any person engaged in the business of selling aircraft in Arkansas who holds aircraft for resale in stock, may rent or use the aircraft in a charter service operated by that person for a period of one year from the date of purchase of the aircraft without remitting the tax on the aircraft so used. When the aircraft is eventually sold, however, the tax must be remitted at the time of sale. If the aircraft is sold within the one year period, the tax shall be computed on the actual sale price of such aircraft or the price paid for the aircraft by the seller, whichever is greater. If a year passes and the rented or chartered aircraft has not been sold, then the tax must be remitted by the person engaged in the business of selling aircraft in Arkansas on his purchase price.

In sum, Central claims that the only mention in § 26-52-409 as to when its tax liability must be paid is in provision (c) where it refers to "the time of subsequent sale." It also refers to GR14(F) language which provides, "When the aircraft is eventually sold, however, the tax must be remitted at the time of sale." Thus, Central argues DF&A must await Central's sale of these planes before collecting the taxes that have accrued on them.

■ Central's argument tends to ignore that the exemption specifically awarded under § 26-52-409 is not to exceed one year from the date Central purchased the five airplanes in issue. That exemption is specifically provided in § 26-52-409(a)(1) and for that one-year period, Central's rental and lease of those aircraft did not constitute a withdrawal from stock, and therefore it was not required to pay the sales tax on the purchase price of the aircraft. Inferentially, that exemption ends and the airplanes are considered a withdrawal from stock when they have not been resold after the prescribed one year. Accordingly, the general gross-receipts tax provision, § 26-52-501, then becomes applicable, making Central's tax due on or before the 20th of the month following the end of the one-year period. This interpretation of § 26-52-409 is consis-

tent with DF&A's GR 14(F)(1). The regulation first notes that a person, holding an aircraft for resale, may rent or use it *for one year* from the date of purchase *without remitting the sales tax* and then provides, *if a year passes and the rented or chartered aircraft has not been sold, then the tax must be remitted.*

■ Finally, we should point out that Central's reading of § 26-52-409 tends to blur the statute's plain language. For example, Central argues the provision (c) language, "the aircraft purchaser shall collect and remit the gross-receipts tax on the aircraft at the time of subsequent sale," applies to the sales of aircraft made both *during and after* the one-year holding period. Again, we must disagree. First, if we accepted Central's interpretation, Central could avoid payment of any sales tax it owed on its five planes simply by not reselling them. Obviously, the General Assembly never intended such a consequence, and this court is duty bound to reject any interpretation of a statute that results in absurdity or injustice, leads to contradiction, or defeats the plain purpose of the law. *Ragland* v. *Alpha Aviation, Inc.*, 285 Ark. 182, 686 S.W.2d 391 (1985). Central tries to explain that its interpretation of § 26-52-409 would not necessarily allow Central to avoid its liability for accrued sales taxes by not reselling the planes it purchased, and does so by suggesting Central would be the consumer and required to remit the tax payment within a reasonable time after the one-year holding period. Of course, no such language suggesting this procedure can be found either in § 26-52-409 or CR 14(F)(1), and we are obliged to give a statute effect just as it reads, if no ambiguity exists. *See Pledger* v. *Ethyl Corp.*, 299 Ark. 100, 771 S.W.2d 24 (1989).

■ We conclude that the reasonable construction of the "at time of subsequent sale" language in provision (c), relied on by Central, is that it refers only to those aircraft sold "during the one-year holding period." In other words, when a sale occurs during the one-year period, the purchaser must then remit payment. Otherwise, after the one-year period ends, the taxpayer must remit payment on or before the 20th day of the following month.

For the foregoing reasons, we reverse.