The Honorable Jimmie Don McKissack State Representative 3416 Highway 65 South Pine Bluff, Arkansas 71601
Dear Representative McKissack:
This official Attorney General opinion is rendered in response to certain questions you have raised concerning financial aid to a school district by a city.
More specifically, you have asked:
 (1) If a non-profit organization is formed to carry out a counseling program previously operated by a school district, would this constitute an operating expense of the school district?
 (2) May a city fund the operating expenses of a school district from any of funds other than donations, gifts, or a tax passed for that purpose as provided by A.C.A. § 26-73-114(c)?
 (3) May a city contract with a non-profit organization to take over the operation of a counseling program that is currently paid for and operated by a school district?
RESPONSE
Question 1 — If a non-profit organization is formed to carry out acounseling program previously operated by a school district, would thisconstitute an operating expense of the school district?
It is my opinion that this question is one of fact which I cannot definitively answer. I will, however, set forth the principles of law that should be considered in evaluating the issue.
The significance of whether a particular expense constitutes an "operating expense" arises out of the provisions of A.C.A. § 14-58-501, which states:
 Incorporated towns and cities of the first or second class in the State of Arkansas are empowered and authorized annually to grant financial aid to any public school district in which the town or city is located for the purpose of assisting the school district in retiring school bonds or paying the operating expenses of the district.
A.C.A. § 14-58-501.
The term "operating expenses," as used in the above-quoted statute is not defined by the statute. While I cannot supply a definition,[1] I do find it reasonable to give the phrase its commonly-understood meaning, in light of the fact that the language of the statute is not ambiguous. SeeWeiss v. Central Flying Service, 326 Ark. 685, 934 S.W.2d 211 (1996).
The commonly-understood meaning of the phrase "operating expenses" is reflected in the definition of that term that is set forth in Black's Law Dictionary, which states: "Those expenses required to keep the business running, e.g. rent, electricity, heat. Expenses incurred in the course of ordinary activities of an entity." BLACK'S LAW DICTIONARY, 5th Ed.
The question of whether the expense of operating a counseling program would constitute an "operating expense" under this common usage of the term is a question of fact. Op. Att'y Gen. No. 89-257. Its determination will entail a consideration of whether, as a factual matter, the counseling program is considered to constitute a part of the ordinary activities of the school district, and whether it constitutes such an integral part of the business of the school district that its continued operation would be considered to be crucial to the continued operation of the school district itself.
These matters are clearly issues of fact that my office is not authorized to address and determine. However, they are issues that must be considered in order to determine whether the expense of the counseling program constitutes an "operating expense" of the school district.
Question 2 — May a city fund the operating expenses of a school districtfrom any of funds other than donations, gifts, or a tax passed for thatpurpose as provided by A.C.A. § 26-73-114(c)?
It is my opinion that a city may fund the operating expenses of a school district from any funds received by the city, except:
 (1) the proceeds of taxes collected by the state or county for the city; and
 (2) the proceeds of taxes that have been designated for a specific purpose other than to aid the school district.
This question is governed in part by A.C.A. § 14-58-502 and A.C.A. §26-73-114.
A.C.A. § 14-58-502 states:
14-58-502. Funds from which payable.
 Financial aid granted and paid to public school districts shall be paid out of any funds received by the town or city. However, payments shall not be made from the regular city taxes collected by the county or state for the town or city.
A.C.A. § 14-58-502.
The limitation stated in the final sentence of the above-quoted provision does not apply to sales and use taxes. That is, cities can use the proceeds of sales and use taxes to donate to public school districts. The authority to do so is granted by A.C.A. § 26-73-114, which states:
26-73-114. Dedication of sales and use tax to school district.
 (a) When a city or county calls an election on the issue of a sales and use tax, it may designate on the ballot that a portion of the tax will be dedicated to a school district or districts located wholly or partially within the city or county on a per capita basis.
 (b)(1) The Treasurer of State shall transmit to the treasurer or fiscal officer of each such local school district that district's share of the local sales and use taxes collected under this section at the same time as the city and county taxes are transmitted.
 (2) Funds so transmitted may be used by the school district for any purpose for which the school district's general funds may be used.
 (c) To the extent § 14-58-502 conflicts with this section, it is hereby superseded.
A.C.A. § 26-73-114.
The limitation stated in A.C.A. § 14-58-502 does, nevertheless, apply to the proceeds of any other "regular city taxes" collected by the state or county for the city. See, e.g, the city property tax authorized by A.C.A. § 26-73-201 et seq. Cities may not use the proceeds of such taxes to donate to public school districts.
The above-quoted statutes, when read together, grant cities the broad authority to provide financial aid to pay for a school district's operating expenses from virtually any source of city funds (including the proceeds of sales and use taxes), except the proceeds of "regular city taxes" collected by the county or state for the town or city.
This authority is further limited, however, by the provisions of Article 16, § 11 of the Arkansas Constitution, which states:
 No tax shall be levied except in pursuance of law, and every law imposing a tax shall state distinctly the object of the same; and no moneys arising from a tax levied for one purpose shall be used for any other purpose.
Ark. Const., art. 16, § 11 (emphasis added). Accord, City of Jacksonvillev. Venhaus, 302 Ark. 204, 788 S.W.2d 478 (1990) (monies collected for one purpose cannot be spent for another purpose); Bell v. Crawford County,287 Ark. 251, 697 S.W.2d 910 (1985).
Under the limitations of this constitutional provision and the holdings of the Arkansas Supreme Court in the cited cases, accordingly, cities cannot provide financial aid to a school district using the proceeds of taxes that were levied for a specific purpose other than to aid the school district.
I therefore conclude that a city may fund the operating expenses of a school district from any funds received by the city, except:
 (1) the proceeds of "regular city taxes" collected by the state or county for the city; and
 (2) the proceeds of taxes that have been designated for a specific purpose other than to aid the school district.
There appear to be no other limitations on cities' authority to use city funds to pay the operating expenses of school districts.[2]
Question 3 — May a city contract with a non-profit organization to takeover the operation of a counseling program that is currently paid for andoperated by a school district?
Although a definitive answer to this question will depend largely upon the specific facts surrounding the counseling program, it is my opinion that a city can contract with a non-profit organization to take over the operation of a counseling program that is currently paid for and operated by a school district, provided that the operation of the counseling program is factually determined to constitute an "operating expense" of the school district, within the meaning of A.C.A. § 14-58-501.
The scenario that you have presented gives rise to a question of the applicability of Article 12, § 5 of the Arkansas Constitution.[3] A scenario of this precise nature under Article 12, § 5 has not been considered or addressed by the Arkansas Supreme Court. It should be made clear from the outset that the concern arising out of this situation is not the contract with the non-profit organization, but rather the fact that the contract is in aid of and for the benefit of a public school. Cities clearly can enter into contracts that are supported by valid consideration. See Op. Att'y Gen. No. 97-250; A.C.A. § 14-54-101(2); Cityof Ft. Smith v. Bates, 260 Ark. 777, 544 S.W.2d 525 (1976); City ofHarrison v. Boone County, 238 Ark. 113, 378 S.W.2d 665 (1964). Moreover, this authority includes the power to contract with non-profit organizations. See Woodruff v. Shockey, 297 Ark. 595, 764 S.W.2d 431
(1989). Such contracts have been upheld as not being in violation of Article 12, § 5. See Arkansas Uniform Linen Supply v. InstitutionalServices Corp., 287 Ark. 370, 700 S.W.2d 358 (1985). The question, instead, is whether the city can enter into such contracts for the benefit of a public school without violating Article 12, § 5.
Although the parameters of the prohibitions of Article 12, § 5, as that section is currently interpreted by the Arkansas Supreme Court, are somewhat unclear in certain contexts,[4] it appears that the provision does not prohibit a governmental donation to a purely public entity that serves a purely public purpose. The court has never struck down such a donation as being violative of Article 12, § 5. See, e.g, McCutchen v.Huckabee, 328 Ark. 202, 943 S.W.2d 225 (1997); City of Paris v. StreetImprovement District No. 2, 206 Ark. 926, 175 S.W.2d 199 (1943); Shofnerv. Dowell, 168 Ark. 229, 269 S.W.2d 588 (1925); see also Hogue v. HousingAuthority of North Little Rock, 201 Ark. 263, 144 S.W.2d 49 (1940). Moreover, this office has consistently opined that governmental donations to public entities in all likelihood do not violate Article 12, § 5.See, e.g., Ops. Att'y Gen. Nos. 96-287, 95-139, 94-147, 94-058, 93-274, 92-250, 92-099, 91-077, and 91-015.
Public school districts are clearly public entities that perform a public function, rather than a private one. Moreover, it has been stated that the establishment and maintenance of schools is a municipal purpose. See
Op. Att'y Gen. No. 97-250, citing 84 C.J.S. Municipal Corporations 1840 at 344. (Of course, the question of whether the particular counseling program at issue herein serves a proper municipal purpose, and of whether the contract at issue is supported by adequte consideration, is a question of fact.)
Accordingly, pending a definitive judicial determination of the issue you have raised, it is my opinion that, generally, a city can contract with a non-profit organization, for the benefit of a public school district, to take over the operation of a counseling program that is currently paid for and operated by the school district — provided that the operation of the counseling program is factually determined to constitute an "operating expense" of the school district, within the meaning of A.C.A. § 14-58-501.[5] See response to Question 1. That determination is one of fact which this office cannot conclusively resolve.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Suzanne Antley.
Sincerely,
WINSTON BRYANT Attorney General
WB:SBA/cyh
[1] This office has consistently taken the position that in the absence of a legislatively- or judicially-formulated definition, it is inappropriate for the Attorney General, being a member of the executive branch of government, to formulate a controlling definition. For the Attorney General to do so would constitute an impermissible violation of the separation of powers principle embodied in Article 4 of the Arkansas Constitution. See, e.g., Ops. Att'y Gen. Nos. 97-268; 96-330; 96-226; 96-142; 95-400; 95-296; 93-272.
[2] The constitutionality of A.C.A. § 14-58-501 et seq. under Article12, § 5 of the Arkansas Constitution has not been challenged. Of course, statutes are presumed to be constitutional. McCutchen v. Huckabee,328 Ark. 202, 943 S.W.2d 225 (1997); Laudan v. State, 322 Ark. 58,907 S.W.2d 131 (1995).
[3] Article 12, § 5 of the Arkansas Constitution states:
 No county, city, town or other municipal corporation shall become a stockholder in any company, association or corporation; or obtain or appropriate money for, or loan its credit to, any corporation, association, institution or individual.
Ark. Const., art. 12, § 5.
[4] I must note that the Arkansas Supreme Court's opinions contain conflicting results in cases involving governmental donations to non-profit organizations. Compare the results in the following cases:City of Jacksonville v. Venhaus, 302 Ark. 204, 788 S.W.2d 478 (1990);Neel v. City of Little Rock, 204 Ark. 568, 163 S.W.2d 525 (1942);Bourland v. Pollack, 157 Ark. 538, 249 S.W. 360 (1923). None of these holdings has been overturned. This office has previously stated, however, that reliance on the two latter cases is "no longer warranted" (Op. Att'y Gen. No. 93-347, n. 2), and these cases have been "called into question" (Ops. Att'y Gen. Nos. 92-019 and 91-077), "have probably been rejected" (Op. Att'y Gen. No. 93-274, citing Op. Att'y Gen. No. 91-015), and have "abandoned by later case law." Op. Att'y Gen. No. 96-069.
[5] I have previously opined that governmental donations must be statutorily authorized. See Op. Att'y Gen. No. 92-250.