The Honorable Roger Norman, JD, CPA, CFE Legislative Auditor Division of Legislative Audit 172 State Capitol Little Rock, Arkansas 72201-1099
Dear Mr. Norman:
I am writing in response to your request for an opinion on four questions concerning the status of unclaimed funds returned by the Auditor of State to the county from which the funds came. You appear to be particularly concerned with the question of whether the county may use such funds pending a claim made by their owner. Your specific questions are as follows:
 1. When the Auditor of State returns funds to a county under A.C.A. 18-28-213(c)(1)(A), does the county hold the funds in trust for the unknown rightful owner?
 2. When the Auditor of State returns funds to a county under A.C.A. 18-28-213(c)(1)(A), must the county hold the funds in perpetuity, or may the county expend such funds and merely account for the funds in perpetuity?
 3. If the county expends funds returned from the Auditor of State under A.C.A. 18-28-213(c)(1)(A), then upon petition and proof of ownership by a rightful owner under A.C.A. 18-28-213(c)(1)(B)(iii), from which fund and how should the funds be paid to the rightful owner? *Page 2 
 4. If the county is only required to account for the funds in perpetuity, are there any limitations on the process or purpose for which it may expend the funds?
As background for your questions, you have offered the following:
 Each fiscal year, the Auditor of State returns unclaimed funds, previously held by the Auditor for three (3) years, to the respective reporting counties. See Ark. Code Ann. § 18-28-213(c)(1)(A). The county receiving the funds shall maintain an accounting of the funds in perpetuity." Ark. Code Ann. § 18-28-213(c)(1)(B)(ii) (emphasis .supplied). Although the preceding quote refers to maintaining "an accounting of the funds" in perpetuity, and not maintaining the funds themselves, the county remains liable for future claims by rightful owners. Upon presentation of a proper claim by a rightful owner, "the county shall pay the funds to the rightful owner." Ark. Code Ann. § 18-28-213(c)(1)(B)(iii) (emphasis supplied).
 These code sections are derived from the Uniform Unclaimed Property Act prepared by the National Conference of Commissioners on Uniform State Laws. See Op. Att'y Gen. No. 2004-323 [attached]. The uniform law's section thirteen was apparently not adopted by Arkansas. Compare Uniform Unclaimed Property Act A.C.A. § 13 (1995) with Ark. Code Ann. § 18-28-213 (illustrating the differences in the two sections). Nonetheless, there is some indication that the Commissioners intended the property itself to be held in perpetuity: "Thus, the State does not take title to unclaimed property, but takes custody only, and holds the property in perpetuity for the owner." Uniform Unclaimed Property Act prefatory note (1995) (emphasis supplied).
RESPONSE
I am unable to answer the first three of your questions because the Code provides no guidance as to what the answers should be. Section 18-28-213
of the Code (Repl. 2003) provides only that funds realized from the state's sale of unclaimed goods held by the county and delivered to the state in accordance with law will be held in trust by the state and then, following the lapse of three years, transferred to *Page 3 
the county in which the property was located. This statute imposes upon the receiving county only an obligation to account for the funds in perpetuity and to pay the funds to a rightful claimant upon demand. As discussed below, these provisions leave open a range of questions which invite legislative clarification. With respect to your fourth question, although the Code does not address this issue, assuming a county were authorized to use funds realized from the sale of unclaimed goods, it could presumably use these funds for any purpose which it might otherwise serve using general funds. Again, legislative clarification appears warranted.
Before addressing your specific questions in turn, I should provide a brief account of the rationale underlying both the Uniform Unclaimed Property Act, 8C U.L.A. 88 (2001) (the "Uniform Act"), [1] and its variant as enacted in the Arkansas Code, A.C.A. §§ 18-28-201 through-230 (Repl. 2003 Supp. 2007) (the "Arkansas Act"). As touched upon in the attached Op. Att'y Gen. No. 2004-323 and elaborated upon in the Prefatory Note to the Uniform Act, as a matter of policy, the law prevents the holder of unclaimed property[2] from reaping a windfall by allowing him or it to keep the property. Rather, the holder of such property must report it to the state, which, as administrator, will take custody of (but not title to) the property and undertake efforts to locate the rightful owner. See A.C.A. §§ 18-28-209 (Repl. 2003) (obligating the administrator to publish notice that "is likely to attract the attention of the apparent owner of the unclaimed property") and A.C.A. § 18-28-210(b) ("Upon payment or delivery of property to the administrator, the state assumes custody and responsibility for the safekeeping of the property.").[3] *Page 4 
Under the Arkansas Act, following the lapse of a specified period of time, the property transferred to the state by the county government as the holder of unclaimed property will be considered abandoned and the state will return the property to the county in which it was located.[4] The county will then be charged with maintaining the property — or, as your questions suggest, possibly only an accounting of the property — "in perpetuity." See A.C.A. § 18-28-213 (discussed at length below). The premise upon which a system of this sort is based is that the people, rather than the fortuitous holder of abandoned property, should reap any benefits that might accrue based upon access to and use of that property pending the filing of a valid claim thereto.See, e.g., Louisiana Health Service Indemnity Co., d/b/a Blue Cross ofLouisiana v. McNamara, 561 So.2d 712, 716 (La. 1990) (expressing "a policy that unclaimed property should benefit the general public *Page 5 
rather than holders of the property"); compare A.C.A. § 18-28-211 (Supp. 2007) (providing, inter alia, that because of the public's interest in utilizing abandoned property, the administrator will not be obliged to pay to a valid claimant interest earned on assets realized during the time the state possessed the assets). At issue in your questions is whether the county, pending a claim for the property by its owner, might use not only the interest on money — interest being an asset that the county is arguably entitled to retain while the property is in its custody — but also the corpus itself. The reasoning supporting the latter possibility is that the county might appropriate funds to cover a valid claim, should one ever arise, for a fungible commodity like money.
Question one: When the Auditor of State returns funds to a county underA.C.A. 18-28-213(c)(1)(A), does the county hold the funds in trust forthe unknown rightful owner?
Because the pertinent legislation is silent on this issue, I am simply unable to answer your question. Legislative clarification regarding the nature and the terms of a county's possession of these funds is clearly warranted.
Section 18-28-213 of the Arkansas Code (Repl. 2003) provides:
 (a) All funds received under this subchapter, including the proceeds from the sale of abandoned property, shall be deposited by the administrator in a special trust fund to be known as the "Unclaimed Property Proceeds Trust Fund," from which he shall make prompt payment of claims duly allowed by him as hereinafter provided. Such funds shall be deposited in accounts in one (1) or more financial institutions authorized to do business in this state to be administered in accordance with the laws of this state pertaining to the appropriation, administration, and expenditure of cash funds. Before making the deposit, he shall record the name and last known address of each person appearing from the holder's reports to be entitled to the abandoned property, and the name and last known address of each insured or annuitant, and, with respect to each policy or contract listed in the report of a life insurance corporation, its number, the name of the corporation, and the amount due. The record shall be available for public inspection at all reasonable business hours. *Page 6 
 (b) At the end of each fiscal year, the administrator shall withdraw from the Unclaimed Property Proceeds Trust Fund an amount necessary to reimburse the State Central Services Fund, or its successor fund or fund account, for moneys expended for personal services and operating expenses of administering and enforcing this subchapter.
 (c)(1)(A) At least one (1) time each fiscal year, the administrator shall transfer to the reporting county all funds collected from that county[5] that have not been claimed and that have been held for a full three (3) years.
 (B)(i) After the administrator returns funds to the county, the state is released from its indemnity of the county under § 18-28-210(b) and (f).
 (ii) The county receiving the funds shall maintain an accounting of the funds in perpetuity.
 (iii) If the rightful owner or the owner's heirs or assigns ever appear and petition the county for the return of the funds after providing proof of ownership, the county shall pay the funds to the rightful owner.
 (iv) For purposes of this section, "proof of ownership" means a finding by a court of competent jurisdiction that the person petitioning the county is, in fact, the rightful owner, heir, or assignee.
 (2) At least one (1) time each fiscal year, the administrator shall transfer to the general revenues of the state all remaining funds that have been collected and held for a full three (3) years, less the *Page 7 
amount transferred to the State Central Services Fund, or its successor fund or fund account, as required by this subchapter.
 (d) Each bank depository of unclaimed property funds shall secure the funds to the extent of the amount of the balance of the funds any time on hand and in such manner as the administrator shall require.
(Emphases added.)
With respect to the disposition of unclaimed funds, the statute just quoted differs significantly from the Uniform Act. Whereas the Arkansas Act envisions a conveyance of the property from the state to the county in which the property was located following the lapse of three years,18-28-213(c)(1)(A), the Uniform Act contains no such provision. Rather, § 13 of the Uniform Act provides as follows:
 [(a) Except as otherwise provided by this section, the] [The] administrator shall promptly deposit in the [general fund] of this State all funds received under this [Act], including the proceeds from the sales of abandoned property under Section 12. [The administrator shall retain in a separate trust fund at least [$100,000] from which the administrator shall pay claims duly allowed.] The administrator shall record the name and last known address of each person appearing from the holders' reports to be entitled to the property and the name and last known address of each insured person or annuitant and beneficiary and with respect to each policy or annuity listed in the report of an insurance company, its number, the name of the company, and the amount due.
 [(b) Before making a deposit to the credit of the [general fund], the administrator may deduct:
 (1) expenses of sale of abandoned property;
 (2) costs of mailing and publication in connection with abandoned property;
 (3) reasonable service charges; and *Page 8 
 (4) expenses incurred in examining records of holders of property and in collecting the property from those holders.]
As reflected in A.C.A. §§ 18-28-213(a) and-213(c)(1)(A), the Arkansas Act provides that the state will hold the assets realized from the sale of assets held by a county in the Unclaimed Property Proceeds Trust Fund for a period of three years, following which it will convey the assets back to the county in which the property was located. By way of comparison, § 13 of the Uniform Act provides that the state may immediately deposit at least a portion of all revenues realized from the sale of unclaimed property into the state's general fund, subject only to the condition that the state maintain a trust fund invested with sufficient money to "pay claims duly allowed." Unlike the Arkansas Act, the Uniform Act provides neither that all funds arising from unclaimed property held by a county be placed in a state trust nor that these funds shall at some point be transferred to the political subdivision in which the unclaimed property was initially located.
With respect to your specific question — namely, whether under the Arkansas Act the receiving county will hold the funds in trust — the Code is unfortunately silent. Section 18-28-213(c)(1)(A) provides only that the county will receive the funds, perpetually "maintain an accounting of the funds," and "pay the funds to the rightful owner" should he ever appear. The statute does not address whether the county will hold the funds in trust; whether the county should merely be designated the custodian of the funds in perpetuity; whether the county might expend the funds so long as it maintains an adequate reserve to pay off valid future claims; whether any such reserve should itself be characterized as a trust; or whether the county, should a valid claimant ever appear, would be entitled to retain interest earned on the funds since the county took possession or, possibly, sometime thereafter.
Given the legislature's silence on these issues, I am simply unable to answer your question. I can do no more than observe that the pertinent legislation does not create an express trust in the county, as it does in the state for at least a portion of the funds during its three-year term of possession. Whether a trust in the county might be implied given the context of the legislation is a question only a finder of fact could address. I can only echo the U.S Supreme Court's pronouncement that when the state claims property under a custodial unclaimed property law, it does so as a "conservator." Connecticut Mutual Life Insurance Co. v.Moore, 333 U.S. 541, 546-47 (1947). In this regard, however, I will reiterate that the fundamental *Page 9 
policy underlying unclaimed property legislation appears to be to make available for the benefit of the people assets whose owners have, for whatever reason, failed to claim them. This premise is qualified only by the condition that the assets — which, in the case of the Arkansas Act, will invariably comprise money, possibly including any or all interest earned thereupon — must be returned to a valid claimant should one ever appear.
Given the fungible nature of money, a court applying the pertinent state legislation might conclude that a receiving county is obliged to maintain in trust only sufficient funds to discharge what the county might reasonably anticipate, possibly based upon past experience, will be valid claims made in any given year. See the Comment to § 13 of the Uniform Act ("It is contemplated that the amount of the trust fund which is ultimately established will reflect a State's experience in paying owners' claims."). However, in light of the Code's silence on this issue, I am unable to opine that this apparently sensible formulation is, in fact, the law.
Question 2: When the Auditor of State returns funds to a county underA.C.A. 18-28-213(c)(1)(A), must the county hold the funds in perpetuity,or may the county expend such funds and merely account for the funds inperpetuity?
As you rightly point out in your request, the Code is not entirely clear on this issue. Subsection 18-28-213(c)(1)(B)(ii) obligates a receiving county perpetually to maintain "an accounting of the funds" — a provision you underscore in your request. Subsection 18-28-213(c)(1)(B)(iii) further obligates the county to pay "the funds" upon demand to a valid claimant. In your request, you further underscore the recited term "the funds," apparently to suggest that the county might be obligated to segregate, whether in trust or otherwise, precisely those proceeds realized from selling each particular item of unclaimed property.
Although I agree that the state statute might possibly bear this construction, I must note that the apparent consequence of any such statutory interpretation would be to significantly burden the receiving county, imposing upon it only a perpetual accounting obligation while affording it no corresponding benefit. I will further note that any such reading of the statute might be deemed strained to the point of absurdity. Money is, after all, a completely fungible commodity, with one crisp dollar bill being totally indistinguishable from another — a fact suggesting that a county's obligation to potential claimants should be deemed fulfilled so long as it has sufficient funds on hand at any given point to satisfy successful claims. *Page 10 
The Arkansas Supreme Court has held that in determining legislative intent in order to construe an act, the reason and spirit of the act should take precedence over the letter of the act, where adherence to the letter of the act would result in an absurdity or would defeat the plain purpose of the law. Williams v. City of Pine Bluff, 284 Ark. 551,683 S.W.2d 923 (1985); accord Baker v. Rogers, 368 Ark. 134, 137, 243
S.W.3d 911 (2006) ("[T]his court is duty bound to reject any interpretation of a statute that results in absurdity or injustice. . . ." Weiss v. Central Flying Serv., Inc., 326 Ark. 685, 690,934 S.W.2d 211,214 (1996)."). As noted in Darragh Poultry v. Piney Creek Sales,Inc., 294 Ark. 427, 430, 734 S.W.2d 804 (1988):
 "[E]ven a "literal interpretation" is not unfettered by standards of reasonableness. Literalism must give way to a construction which will avoid absurdity or unreasonableness. This means that, where two or more constructions are possible, and one construction is absurd or unreasonable, a more reasonable construction ordinarily will be adopted."
Quoting Note, Delta Air Lines, Inc. v. August: The Agony of Victory andthe Thrill of Defeat, 35 Ark. L.Rev. 604, 625 (1982).
In the present case, I believe it would be inappropriate to read the statutory term "the funds" as necessarily referring exclusively to "the funds" actually realized from the sale of particular unclaimed property. In my opinion, it would be far more reasonable to read the term "the funds" as referring to "any funds" available to discharge a potentially valid claim. Moreover, inherent in the county's obligation to pay "funds to the rightful owner" upon demand, A.C.A. § 18-28-213(c)(1)(B)(iii), would appear to be an obligation to have such funds available until such demand is satisfied or, in the absence of such demand, "in perpetuity," A.C.A. § 18-28-213(c)(1)(B)(ii). Furthermore, in light of the principles of statutory interpretation set forth above, I believe it would be only appropriate to read the term "in perpetuity" as meaning "forever, unless payment upon a valid claim is made." To interpret the term otherwise would be to impose upon the county a perpetual accounting obligation even upon claims that have been fully satisfied. This result would be patently absurd. That said, I must repeat that this statute would greatly benefit from legislative clarification. *Page 11 
Question 3: If the county expends funds returned from the Auditor ofState under A.C.A. 18-28-213(c)(1)(A), then upon petition and proof ofownership by a rightful owner under A.C.A. 18-28-213(c)(1)(B)(iii), fromwhich fund and how should the funds be paid to the rightful owner?
As reflected in my previous responses, the Code contains no provision for the establishment of a fund from which a receiving county will pay valid claims. I am consequently unable to answer this question. While logic might dictate that a receiving county should make resources available to pay such claims, the Code does not expressly provide for the establishment of any fund to satisfy them. Legislative clarification is warranted.
Question 4: If the county is only required to account for the funds inperpetuity, are there any limitations on the process or purpose forwhich it may expend the funds?
Assuming a county were allowed to make use of funds realized from the sale of unclaimed property, the county would presumably be authorized to use the funds for any purpose for which it might use its general revenues. Again, the Code simply fails to address this issue. Legislative clarification is warranted.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] The 1995 version of the Act was preceded by the 1954 Uniform Disposition of Unclaimed Property Act (1954), which was revised in 1966, and the Uniform Unclaimed Property Act (1981). I will address your questions in terms of the currently effective legislation, subject to the understanding that obligations incurred under previous legislation might be subject to a different standard.
[2] "Property" as defined in the Act, includes "a fixed and certain interest in intangible property that is held, issued, or owed in the course of a holder's business, or by a government, governmentalsubdivision, agency, or instrumentality, and all income or increments therefrom." A.C.A. § 18-28-201(13)(A) (Repl. 2003) (emphasis added). The only tangible property to which the Act applies is that "held in a safe deposit box or other safekeeping depository in this state in the ordinary course of the holder's business and proceeds resulting from the sale of the property permitted by other law." A.C.A. § 18-28-203 (Repl. 2003).
[3] The fact that the state obtains only custody of, rather than title to, the unclaimed property means that the property does not escheat to the state in the sense that the state acquires an ownership interest therein. Some states distinguish between "custody" escheat and "title" escheat. See, e.g., William H. Danne, Jr., Annotation, Validity,Construction, and Application of State Statutes Implementing the UniformUnclaimed Property Act or its Predecessor — Modern Status, 29 A.L.R.6th 507, §§ 16 17 (originally published in 2007) (discussing the distinction between "title" escheat statutes and "custodial" possession statutes); Canel v. Topinka, 818 N.E.2d 311 (Ill. 2004) (generally discussing the historical development and specific application of this distinction).
[4] This return of assets realized from the sale of the property from the state to the county is unique to the situation in which a county government is the holder of property, whether by seizure or otherwise, that belongs to another. If the holder of property is a private entity like a bank (as, for instance, in the case of an unclaimed bank account), the state will require an accounting and take possession of the assets, possibly transferring a portion thereof from its trust account to general state revenues, subject to the condition that the state will be obligated to cover any valid claim to the property.See generally discussion in Danne, supra at note 2.
Although it does not bear directly on your questions, which address solely the custody and possible disposition of assets returned to the county following the state's three-year custody thereof, I will note that the terms of the state's custody are set forth initially at A.C.A. § 18-28-213. As regards the maintenance of assets in the Unclaimed Property Proceeds Trust Fund and the transfer of such assets to the state's general fund, see Acts 2009, Nos. 596, §§ 6-8 (authorizing payments by appropriation, as of July 1, 2009, from the trust fund to the payment of claims) and 1440 and 1441, §§ 10 (directing the State Auditor, as of July 1, 2009, to transfer $10,000,000 from the Unclaimed Property Proceeds Trust Fund into the General Revenue Fund Account of the State Apportionment Fund). My inquiries reveal that the amount of this transfer comprises funds that the Auditor has computed, based upon past experience, will not be needed to cover projected incoming claims. I will further note that Acts 2009, No. 596, § 5, effective July 1, 2009, authorizes the Auditor of State to expend $15,000,000 from the Unclaimed Property Proceeds Trust Fund to discharge valid claims made within three years of the state's maintaining custody of unclaimed property and $775,000 to discharge older claims.
Section 18-28-212 (Supp. 2007) mandates that the administrator sell any abandoned property in his possession during the three-year period preceding a transfer of assets to the county in which the property was located. It follows that the unclaimed property in the county's possession will always take the form of "funds" of the sort referenced in your request.
[5] My inquiries reveal that the term "collected from that county" refers only to the proceeds from the sale of unclaimed property held by the county as a governmental unit, as opposed to all assets realized from the sale of unclaimed goods reported by any entity, public or private, located within the county. As a practical matter, then, a significant portion of unclaimed goods will remain within the custody of the state, subject to disposition in accordance with the mechanism discussed in note 4, supra.

 *Page 1