John Threet, Prosecuting Attorney Fourth Judicial District Washington County Courthouse
280 North College Avenue, Suite 301 Fayetteville, Arkansas 72701
Dear Mr. Threet:
I am writing in response to your request for my opinion on a question I will paraphrase as follows:
 Do the provisions of A.C.A. § 26-3-203 concerning collection of delinquent property tax on mobile and manufactured homes still apply if the delinquent individual no longer owns the mobile/manufactured home due to it being sold, foreclosed, or otherwise taken back by the mortgage holder?
RESPONSE
The relevant law concerning delinquent taxes will obviously continue to apply once ownership of a mobile or manufactured home is transferred as a result of any occurrence. The question is what the law dictates in the event of such a transfer. Your concern appears to be whether the seller or other owner of record of the property prior to the conveyance will continue to be liable for the delinquent property tax or whether the tax obligation runs with the property, which under Arkansas law is considered realty. In my opinion, under the statute, the buyer of the mobile or manufactured home will incur the delinquent tax obligation. The collector, however, will need to be provided documentation of the transfer before allowing a seller to pay his personal property taxes without simultaneously paying the delinquent real taxes on the mobile or manufactured home. In such a case, I believe the buyer would be responsible for discharging the delinquency. Needless *Page 2 
to say, of course, the parties to the sale may by private contract arrange that the seller will defray this obligation.
Section 26-3-203 of the Arkansas Code (Supp. 2009), which has not previously been interpreted by the courts or this office, provides as follows:
 (a) Mobile homes and manufactured homes shall be deemed real property for the purpose of ad valorem property taxation.
 (b) Real property taxes and any interest, penalties, or other charges on a mobile home on a leased site in a mobile home park or any other leased site, and any assessment or user fee chargeable to the owner of the mobile home and constituting a lien, shall be assessed and levied against the owner of the mobile home whose name appears on the certificate or other acceptable evidence of ownership, and shall be a lien on the mobile home or manufactured home only.
 (c) When the property tax on mobile homes and manufactured homes which are now assessed as real property become[s] delinquent, the delinquent real property tax shall be attached to the personal property tax of the owner of the mobile home or manufactured home and the collector shall not accept payment of the personal property taxes without collecting payment of the delinquent real property taxes at that time.
Subsection (b) of this statute provides that both currently due and delinquent taxes on a mobile or manufactured home will be assessed against the owner of the home, as established by any "acceptable evidence of ownership," regardless of when the delinquency arose. This subsection further provides that the obligation will constitute a lien on the dwelling.
Subsection (c) of the statute further provides that the delinquent tax will attach to the personal property tax of the owner "[w]hen the property tax . . . become[s] delinquent" — a formulation that suggests that the obligation to pay the delinquency at least initially lies with the owner of the dwelling at the time the delinquency arises. The question arises, then, whether the obligation to pay the delinquency transfers to a subsequent owner upon a conveyance of the property. In my opinion, although the statute would benefit from legislative clarification, the answer to this question is "yes" — i.e., the obligation to pay delinquent taxes will *Page 3 
follow the property when it changes hands. I am supported in this conclusion by the fact that subsection (b) of the statute suggests that even if the dwelling is transferred, a lien in the amount of the delinquent taxes will continue to attach to the dwelling.
In construing this statute, I am guided by the following:
 The first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary meaning and usually accepted meaning in common language. We construe the statute so that no word is left void, superfluous, or insignificant; and meaning and effect are given to every word in the statute if possible. When the language of the statute is plain and unambiguous, there is no need to resort to rules of statutory construction. When the meaning is not clear, we look to the language of the statute, the subject matter, the object to be accomplished, the purpose to be served, the remedy provided, the legislative history, and other appropriate means that shed light on the subject.[1]
In determining the intent of lawmakers, the courts are required to look to the whole act, rather than to isolated words or sections.[2] The intent that is reflected by the act as a whole should take precedence over any intent reflected by isolated words or sections.[3] The Arkansas Supreme Court has held that in determining legislative intent in order to construe an act, the reason and spirit of the act should take precedence over the letter of the act, where adherence to the letter of the act would result in an absurdity or would defeat the plain purpose of the law.[4] As the Arkansas Supreme Court has noted: *Page 4 
 "[E]ven a "literal interpretation" is not unfettered by standards of reasonableness. Literalism must give way to a construction which will avoid absurdity or unreasonableness. This means that, where two or more constructions are possible, and one construction is absurd or unreasonable, a more reasonable construction ordinarily will be adopted."[5]
Finally, specifically with respect to cases involving taxation, the court has held as follows:
 An additional rule of statutory construction in the area of taxation cases is that when we are reviewing matters involving the levying of taxes, any and all doubts and ambiguities must be resolved in favor of the taxpayer. Barclay v. First Paris Holding Corp., 344 Ark. 711, 42 S.W.3d 496 (2001); Central and Southern Cos. v. Weiss, 339 Ark. 76, 3 S.W.3d 294 (1999).[6]
In my opinion, applying these standards, the better reading of the statute — one that conforms with what I understand to be accepted practice — is that it directs that the obligation to pay delinquent taxes, like the lien that secures such payment, should follow the land when conveyed, thus charging the current owner, not the prior owner under whom a delinquency arose, with defraying the delinquent tax obligation as a condition of paying his personal property taxes and registering his vehicle. As a practical matter, of course, the seller will reasonably have to satisfy the collector that a conveyance of the property has actually occurred before the collector can be expected to absolve the former owner of liability for a delinquency.
I reach this conclusion because it verges on absurdity to suggest that the buyer of a mobile/manufactured home will be subject to a lien on his property while having no direct obligation to satisfy the underlying debt. In the absence of fraud on the part of the seller — conduct that might directly support a buyer in an action at law — it would appear logical that the buyer and seller would address the issue of a tax *Page 5 
delinquency outstanding at the time of sale simply in the course of negotiating a purchase price. Indeed, it is a fundamental tenet of contract law that there must be a meeting of the minds between the parties as to all material terms[7] — one of which would obviously be that the property being exchanged is subject to a lien. Again, excluding any possibly fraudulent nondisclosure by the seller, this process of arm's-length negotiation would foreclose any possibility that the seller is being unfairly forgiven his debt.
In offering the above conclusion, I am not ignoring the fact that subsection (c) of the statute provides that the delinquent tax obligation will attach to the owner's personal tax obligation at the time the delinquency arises. It is indisputable, then, that an owner who permits a real estate delinquency to arise in his real-estate taxes on a mobile/manufactured home will have the delinquency attach to his personal-property taxes, meaning that he will have to discharge the delinquency when paying his personal property taxes before being issued a vehicle registration. However, acknowledging as much does not answer the question of whether a purchaser of such property at the time of the sale assumes both the lien on the purchase and the personal obligation to discharge the delinquency. In this regard, I will note that subsection (b) of the statute provides point-blank that real taxes, including penalties thereon, will be "chargeable to the owner of the mobile home and constituting a lien" — the referenced "owner" being "the owner of the mobile home whose name appears on the certificate or other acceptable evidence of ownership." Consequently, if the property has changed hands, then, by valid conveyance as reflected in "a certificate or other acceptable evidence of ownership," it would appear that the purchaser, not the seller, will be charged with any delinquent and current taxes.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] Macsteel, Parnell Consultants v. Ar. Ok. Gas Corp.,363 Ark. 22, 210 S.W.3d 878 (2005) (internal citations omitted);see also Ops. Att'y Gen. 2005-072 2004-339.
[2] See Kifer v. Liberty Mut. Ins. Co.,777 F.2d 1325 (8th Cir. 1986); Elizabeth Arden Sales Corp. v. GusBlass Co., 150 F.2d 988, cert. denied 326 U.S. 773 (1945).
[3] Id. Accord Op. Att'y Gen. No. 2004-208.
[4] Williams v. City of Pine Bluff,284 Ark. 551, 683 S.W.2d 923 (1985); accord Baker v. Rogers,368 Ark. 134, 137, 243 S.W.3d 911 (2006) ("[T]his court is duty bound to reject any interpretation of a statute that results in absurdity or injustice. . . .)"; Weiss v. Central Flying Serv.,Inc., 326 Ark. 685, 690, 934 S.W.2d 211, 214 (1996).").
[5] Darragh Poultry v. Piney Creek Sales, Inc.,294 Ark. 427, 430, 734 S.W.2d 804 (1988), quoting Note,Delta Air Lines, Inc. v. August: The Agony of Victory and theThrill of Defeat, 35 Ark. L. Rev. 604, 625 (1982).
[6] Mississippi River Transmission Corp. v. Weiss,347 Ark. 543, 550, 65 S.W.3d 867 (2002).
[7] Daimler/Chrysler Corp. v. Smelser,375 Ark. 216, 218, 289 S.W.3d 431 (2008), citing AlltelCorp. v. Sumner, 360 Ark. 573, 203 S.W.3d 77 (2005).